[Civ. No. 834.   Fourth Appellate District.—March 20, 1933.]

CONSOLIDATED IRRIGATION DISTRICT (a Corporation), Respondent, v. J. A. CRAWSHAW, Appellant.

H. Scott Jacobs and John G. Covert for Appellant.

Harris, Wiley, Griffith & Harris and Sidney W. Sharp for Respondent.

MARKS, J.—Respondent is an irrigation district, organized under the Irrigation District Act of the state of California, and engaged in delivering irrigating water through its canals to irrigable lands within its boundaries. This water is taken from the Kings River in Fresno County. Appellant is the owner of land in what is known as Island No. 3 Irrigation District, which was to be furnished with

irrigating water through what is known as the Centerville and Kingsburg canal of respondent.

The predecessors in interest of the parties hereto entered into a contract, and a modification thereof, for furnishing irrigating water from the Kings River to lands which included those of appellant. Under these agreements the predecessor of respondent, in consideration of ten dollars, contracted to furnish the predecessor of appellant "all the water that may be required, not exceeding two cubic feet of water measured and flowing per second for each quarter section of land hereafter described, or a *pro rata* proportion thereof for subdivisions of less than quarter sections". The contract provided for the construction of canals of sufficient size and capacity to deliver water onto or near the lands to be irrigated. The land owners agreed to construct ditches from the gates in the canals and to maintain and keep them in repair under the control of the irrigation district. The water to be furnished was to form a part of the appurtenances to the land and could be transferred only with the land. The land owner agreed to pay to the irrigation district on the first day of October of each year the sum of seventy-five cents per acre for each acre of the land to be irrigated. The contract specified that this provision should serve as a notice of and demand for such payment in each year, and in case of default the agreements might be terminated at the option of the irrigation district. The payments were made a lien upon the land and the land owner agreed to pay a reasonable attorney's fee in any suit brought to enforce collection of any amount unpaid. The irrigation district was released from liability for any loss occasioned by a deficiency of the water because of drought, insufficient water, adverse appropriations, hostile diversions, and other causes not necessary to specify. In case of a water shortage the deficiency was to be prorated among the land owners. The contracts were made subject to all "existing rights, contracts, agreements, judgments or decrees affecting the right to use water from the said Kings River."

The complaint alleged that appellant failed to make the payments of $75 per year, due on the first day of October for the years 1924, 1925, 1926, 1927, and respondent sought to foreclose the lien on appellant's land for $300 principal, interest, attorneys' fees, and costs. The answer of appel-

lant denied most of the material allegations of the complaint and alleged that an executed oral agreement had reduced the amount of the annual payments. He also alleged a failure on the part of respondent to deliver irrigating water during the time covered by the complaint and filed a cross-complaint seeking damages for failure to deliver water during the four years in question. The allegations of this pleading were denied and the case went to trial before a jury upon the issues thus framed.

The jury returned a verdict in favor of respondent in the sum of $300, and in favor of appellant on his cross-complaint in the sum of $228. The court fixed attorneys' fees for respondent at $75, accrued interest at $73.50, and costs in the sum of $84.05. Appellant's costs were allowed in the sum of $168.10. This would leave a balance due from appellant to respondent in the principal sum of $52.40, plus $84.05, costs. The decree of foreclosure fixed the amount unpaid at $220.50. Respondent admits this amount is erroneous and that it should be reduced to $52.40.

The suit to foreclose the lien upon appellant's property was an equitable action and the verdict of the jury was advisory only on the equitable issues presented. The cause of action stated in the cross-complaint was based on breach of contract and was an action at law. On the issues presented by this pleading the verdict of the jury had the same force and effect as in any other action at law.

The case is before us on a bill of exceptions in which some forty errors are specified. It will, however, be necessary for us to consider but few of them. The issue upon which this decision must turn is the construction of the water contracts between the predecessors of the parties now before this court. We must determine whether the covenant of the land owner to make the annual payments specified in the contract is dependent upon and concurrent with the covenant of the irrigation district to furnish the irrigating water. Respondent relies upon the case of *Fresno Canal & Irrigation Co.* v. *Perrin,* 170 Cal. 411 [149 Pac. 805, 807], wherein it was held that the covenants of a similar contract were not dependent or concurrent. Appellant relies with equal confidence upon the case of the *Madera Canal & Irrigation Co.* v. *K. Arakelian, Inc.,* 103 Cal. App. 592 [284 Pac. 971], in which a somewhat similar contract was

before the court for interpretation and where it was held that the plaintiff could not recover the annual payment for a year during which it might have but did not furnish irrigating water to the land owner. In the Arakelian case a hearing in the Supreme Court was denied.

A study of the two opinions last referred to did not reveal to us a sufficient difference between the contracts to make them easily distinguishable. Therefore, we have obtained and have made a careful study of the original records in both appeals and find there are sufficient differences in the two contracts so that a satisfactory reason for each decision is apparent to us.

The contracts in the Perrin case, the Arakelian case and the case before us are so similar in general structure and in the verbiage in numerous paragraphs that it is apparent that a common form was used for the preparation of all three of them. Their main differences occur in the covenants particularly applicable to the circumstances of the case in which they were used.

The Perrin contract was made in consideration of the sum of $5 paid to the Fresno Canal and Irrigation Company. The annual payment was fixed at the sum of $100 per year and was to be made on the first Monday in September. It was not specified that this payment should be regarded as an annual water rate or payment for the water furnished. It would seem to have been the intention of the parties that this annual payment included payment for all of the services rendered by the Fresno Canal and Irrigation Company, of which the delivery of water to the lands to be irrigated was only a part.

The contract in the instant case was made in consideration of the sum of $10 paid to the irrigation district, with the annual payment of seventy-five cents per acre to be made on the first day of October of each year. This contract follows very closely the contract in the Perrin case and the two would seem to be subject to the same general construction.

The Arakelian contract was made upon a consideration of $2,000 paid to the Madera Canal Irrigation Company. The annual payments were to be made on the first day of September of each year, and we find expressions not contained in either of the other two agreements. We quote

them as follows: "But the exercise of such option should not operate to prevent said first named corporation from recovering any balance that may be due or unpaid *for water furnished* upon said land under this agreement. . . . From recovering either at law or in equity any amount already due and unpaid *for water furnished* under this agreement. . . . That such *annual water rate* . . . The *annual water rate* herein provided for.'' (Italics ours.)

From the above quotations it is evident that the District Court of Appeal in deciding the case of *Madera Canal & Irrigation Co.* v. *K. Arakelian, Inc., supra,* and the Supreme Court in denying the petition for hearing, must have concluded that the annual payment specified in that contract was a payment for water furnished each year. If this be true, the failure to furnish water for any one year would constitute a failure of consideration and relieve the land owner from the obligation to make the annual payment specified in the contract. We believe that this furnishes sufficient ground upon which the opinions in the cases of *Fresno Canal & Irrigation Co.* v. *Perrin, supra,* and *Madera Canal & Irrigation Co.* v. *K. Arakelian, Inc., supra,* may be reasonably distinguished. This conclusion is strengthened by the fact that in the Arakelian case the respondent cited the Perrin case in his brief and argued its effect at length.

As the contract in the instant case follows closely the language of the contract in the Perrin case, and contains no mention of a water charge or water rate as appears in the Arakelian case, we believe the decision of the Supreme Court in the case of the *Fresno Canal Irrigation Co.* v. *Perrin, supra,* is controlling here. It was said by the Supreme Court in that case: "But the covenants are not dependent or concurrent. The water was to be furnished, when wanted, continuously from February 19, 1897, to February 16, 1921, while the payments were to be made annually as aforesaid. The furnishing of the water for the first six months could not be dependent upon or concurrent with the payment to be made in the following September. The same would be true of each succeeding year, upon the plaintiff's election not to terminate the agreements by reason of the failure of the defendant to pay. Where the covenants of the respective parties are to be performed at different times they are held to be independent and the breach by one party

of his covenant does not excuse the performance by the other of his covenant or relieve him of liability for damages for a breach thereof. (*Southern Pac. R. Co.* v. *Allen*, 112 Cal. 461 [44 Pac. 796]; *Front St. M. & O. R. Co.* v. *Butler*, 50 Cal. 577; *Bank of Woodland* v. *Duncan*, 117 Cal. 412 [49 Pac. 414]; *Deacon* v. *Blodget*, 111 Cal. 418 [44 Pac. 159].) Upon these facts, the most that the plaintiff can claim on account of the failure of the defendant to make the payments is the right to recover the same and to have the amount set off *pro tanto* against such damage as the defendant has shown from the failure of the plaintiff to deliver water." Applying this rule to the facts of the case before us, the conclusion is inevitable that as the sum of $75 per year for the years 1924 to 1927, inclusive, was not paid by appellant, respondent was entitled to judgment for the aggregate amount of $300, together with its costs and attorneys' fees. (See, also, *Transmarine Corp.* v. *R. W. Kinney Co.*, 123 Cal. App. 411 [11 Pac. (2d) 877].)

Appellant urges that the written contract under which he was required to make his annual payments was modified by an executed oral agreement to the extent that his payments were reduced to $60 a year. The trial court refused to admit in evidence two checks for $60 given by appellant to respondent's predecessor and struck out some of appellant's testimony supporting this theory. The stricken and rejected evidence, together with that remaining in the record, falls short of showing an executed oral agreement modifying the written contract. Little more is indicated than that there was a compromise of a past due account and that there were some other incomplete negotiations looking to a reduction of the annual payments.

Appellant complains of the ruling of the trial court in overruling his objection to the following question: "Mr. Harris: Q. Could you say that, being familiar with the run-off of Kings River and familiar with the rights of the Centerville and Kingsburg ditch, irrigation ditch company, to divert water from the Kings River, and with the record showing the distribution of the water so appropriated, whether or not the water, the proportionate amount of water to which Island No. 3 should receive under the contract marked Exhibit 2 has been so delivered?" We think the objection should have been sustained. There were many

appropriators entitled to take water from the Kings River, the flow of which was, under contract, apportioned among them by a water-master whom they employed. The question involved not only an interpretation of the water contracts between the predecessors in interest of the parties here, but also of the contract apportioning the waters of the Kings River between those entitled thereto, and a proper division of those waters by the water-master. It involved, too, many questions of law and of fact not shown to have been within the knowledge of the witness. However, we do not consider the error prejudicial. Under the theory of *Fresno Canal & Irrigation Co.* v. *Perrin, supra,* respondent did not have to prove delivery of the water to recover. Performance was only material in meeting appellant's case under his cross-complaint. There is ample evidence in support of the allegations of this pleading which was accepted by the jury, as is shown by its verdict awarding damages to appellant.

Appellant complains of an instruction given by the trial court and of the refusal to give instructions which he proposed. These instructions presented the question of the necessity of proving performance of the contract by the respondent. As the contract was neither concurrent nor mutual (*Fresno Canal & Irrigation Co.* v. *Perrin, supra*), the action of the trial court upon these instructions was correct.

Appellant complains because there were no findings of fact filed. Findings of fact were necessary on the equitable issues involved and unnecessary on the legal issues involved, the verdict of the jury taking the place of findings on the latter.

There were no separate findings filed, they being incorporated in the decree of foreclosure. While this is not the usual practice it is permissible. (*Locke* v. *Klunker,* 123 Cal. 231 [55 Pac. 993]; *Hopkins* v. *Warner,* 109 Cal. 133 [41 Pac. 868]; *Covell* v. *Lee,* 69 Cal. App. 1 [230 Pac. 208].)

The trial court found ''that all the allegations of plaintiff's amended complaint are true''; that $75 was due and unpaid on the first days of October, 1924, 1925, 1926, and 1927, with interest at seven per cent per annum from the several dates amounting to $73.50, and fixed the attorneys' fees at $75. This disposed of all the equitable issues

except the affirmative defense of the modification of the written contract by an executed oral agreement which is inferentially found against appellant by the express finding that the amount specified in the contract was due. If this be regarded as insufficient as a finding on this defense, a direct finding upon the issue would have been adverse to appellant under the evidence before us. A failure to find upon an issue is not ground for a reversal of a judgment when such a finding, if made, would be adverse to appellant. (*Hulen* v. *Stuart*, 191 Cal. 562 [217 Pac. 750]; *Estate of Henderson*, 196 Cal. 623 [238 Pac. 938].)

The judgment is reduced from $220.50, principal, to $52.40, so that the plaintiff recovers judgment for $52.40, principal, and $84.05, costs. The judgment as so reduced is affirmed. Each party will pay his own costs on appeal.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1933.