[Civ. No. 2944. Fourth Dist. Dec. 2, 1941.]

H. B. LIND, Plaintiff, v. ANNIE M. BAKER et al., Respondents; HELEN E. LIND, Appellant, v. ANNIE M. BAKER et al., Cross-Defendants.

Haight, Trippet & Syvertson for Appellant.

Harry H. Parsons and Sharpless Walker for Respondents.

GRIFFIN, J.—This is an action in equity to enforce specifically a purported contract for the sale of four mining claims located in San Bernardino County. The issues were presented on a cross-complaint filed by Helen E. Lind, appellant herein. A trial was first had on the complaint in this

action and after judgment thereon, a trial was had on appellant's cross-complaint.

On the 20th day of June, 1934, H. B. Lind filed an action to quiet title to several mining claims in San Bernardino County. Four of the claims included in the complaint are the subject matter of appellant's cross-complaint. H. B. Lind shall hereafter be referred to as "plaintiff." Plaintiff claimed title to the claims on the basis of locations made by him on July 1st, 1931. The four claims in question on this appeal had prior to July 1, 1931, been located in the name of cross-defendant and respondent Annie M. Baker. There were numerous defendants in the principal action claiming interests upon different grounds. All of the defendants in the principal action were also named as cross-defendants in appellant's cross-complaint. As will subsequently appear, the rights of certain of these cross-defendants are not in issue on this appeal.

Appellant's claim is based upon a purported contract of sale made in 1930 between appellant and the respondent Annie M. Baker. It was only enforceable, if at all, in the event the claims had not been lost by her or her successors in interest, due to the subsequent locations by plaintiff. It was agreed by all parties that a trial should be first had on the issues of the complaint and, if the plaintiff prevailed thereon, the cross-complaint of appellant would necessarily fail. It was also agreed that in the event the plaintiff did not prevail upon his complaint, then a trial would be had on the cross-complaint of the appellant. The parties proceeded to trial on the complaint. Findings of fact and a judgment were entered in favor of the defendants and against the plaintiff. This judgment was entered in March, 1937, and considered on appeal in the case of *Lind* v. *Baker*, 31 Cal. App. (2d) 631 [88 Pac. (2d) 777], wherein many facts pertinent to this appeal are set forth. By the judgment it was held that the plaintiff had no right or interest in the four claims in issue on this appeal. After the judgment on the complaint had been entered the appellant proceeded to trial on her cross-complaint. The cross-complaint included a cause of action for an accounting. Appellant at the trial abandoned this cause of action. After trial a judgment was rendered against the appellant and in favor of all the cross-defendants. Appellant now appeals from that judgment.

Prior to 1928, Charles A. Bell and his wife, Sarah Bell, occupied and worked certain mining claims in San Bernardino County. The four claims which are the subject matter of appellant's claimed contract were among the claims owned by Mr. and Mrs. Bell. In January of 1928, Mrs. Bell separated from her husband but he stayed on the property until his death in June of 1932 and continued to work some of the claims. In July, 1929, Bell relocated the four claims in question in the name of his sister, Annie M. Baker, one of the cross-defendants and respondents herein. About October 31, 1931, Annie M. Baker conveyed all her rights to the claims to her children, the cross-defendants and respondents Bayard T. Baker, Verne A. Baker and Elizabeth Henderson Baker. Charles Bell died in June, 1932, and Sarah Bell died in August, 1932. Both died intestate. The cross-defendants and respondents Helen J. Duncan, Ethel A. Golway, Lena Maxson, and Eva Willerford are the heirs of Sarah Bell. The claim of the Bell heirs is based upon the community interest, if any, acquired by Sarah Bell in the locations made by Charles Bell in the name of his sister, Annie M. Baker. It has been adjudicated in the main action that Annie M. Baker had legal title to the claims.

It is contended by appellant that the Bell heirs may have some interest in the money to be paid under the claimed contract but that this in no way interferes with the right of appellant to have her contract specifically enforced.

On the 27th day of September, 1930, Annie M. Baker executed an offer in writing to appellant whereby she offered to sell certain named mining claims to appellant. Portions of this written offer are as follows:

"To H. E. Lind . . .

"In the matter of my lode mining claims named respectively the Gold Bullion (nee Gold Bronze), Paymaster, Coyote, Badger and Copper King . . . I . . . submit to you the following proposal:

"That I will sell to you all of said lode mining claims . . . for . . . $25,000, payable . . . $1,000 on or before the twentieth day of January, 1931, and the remainder thereof—$24,000—by and through the payment to me until such time as the full purchase price herein named shall have been liquidated, of a royalty of one-tenth part of the gross proceeds derived by you or by your successors or assigns from the

sale or shipment or milling of ore mined and sold or shipped from any of said lode mining claims; it being understood that such royalty shall be paid to me whether mined and sold or shipped or milled by you or by anyone . . . or by your successors or assigns: And with reference to such royalty I here stipulate that, beginning with the twentieth day of July, 1931, and each and every month thereafter until full liquidation shall have been had you shall pay me no less than one hundred dollars per month as royalty—part royalty—hereby waiving payment of no part of the monthly royalty earnings earned in excess of said $100 per month and which may accrue to me by reason of your mining operations on any of said lode claims.

"All royalties shall be paid to me on or before the twentieth day of each and every month, beginning with the month of July, 1931, immediately succeeding the month in which such royalties are earned. . . .

"Failure on your part . . . to faithfully observe and perform all the terms and conditions and to promptly make the initial and royalty payments as in this proposal provided may, if I so elect, work a forfeiture of all rights conferred upon you. . . .

"I hereby further stipulate that you shall have until the 20th day of December, 1930, in which to make full examination and tests of said lode claims, and to that end you shall have the right, on your acceptance of this proposal, to take full possession of said lode claims . . . so long as you . . . shall fulfill all the conditions in this proposal expressed; it being provided, however, that having examined said lode claims and having tested its ores, should you then fail to approve the same, you shall at time of such disapproval be immediately released from all liability or obligation attaching to you by reason of your acceptance of this my proposal. . . .

"I also stipulate . . . that you shall have twenty days from and after this 27th day of September, 1930, in which to accept or reject this my proposal, your acceptance hereof to be in writing as shall also your disapproval of said lode claims in the event you disapprove or reject them. . . .

"In the latter event this agreement between you and me shall be deemed null and void and of no further effect and,

in the event of forfeiture hereunder it shall likewise be deemed null and void and of no further effect. . . .

(Signed) "ANNIE M. BAKER."

The written acceptance was in this form:

"To Annie M. Baker . . .

"In the matter of your above proposal please be advised that I accept the same and that I hereby agree to abide by all its terms and conditions, and that I reserve the right to approve or disapprove and reject said lode claims on or before the 20th day of December, 1930.

"Dated Los Angeles, California, first day of October, 1930.

(Signed) "H. E. LIND."

This acceptance was acknowledged before a notary public and duly recorded on October 16, 1930. On October 28th, 1930, an additional written acceptance was sent to Annie M. Baker reading in part as follows:

"With reference to your proposal to me of date September 27th, 1930, proposing sale to me of your group of lode mining claims named . . . please be advised that I . . . hereby approve and accept said lode claims at the price and on the terms in your said proposal contained. . . .

(Signed) "H. E. LIND."

On November 12, 1930, Annie M. Baker notified H. E. Lind in writing in part as follows:

"In the matter of my proposal to you . . . and your acceptance . . . which . . . stipulates that you shall, on or before the twentieth day of January, 1931, pay me . . . $1,000, and also begin payment of certain royalties on the twentieth day of July, 1931, please be advised that, beginning with the twentieth day of October, 1930, all time lost to you and your associates by reason of your failure not to gain possession of the premises in said proposal named pursuant to the terms of my said proposal, a failure which I acknowledge and which has been occasioned by my brother, Charles A. Bell, now in the unlawful possession of said premises, refusing to vacate said premises, I will for all such time or period lost to you in the matter of obtaining possession of said premises extend for you—defer for you—the date for the making of said payment of one thousand dollars on or before the twentieth day of January, 1931, and also the dates for paying

and continuing paying the royalties of which payment begin with the twentieth day of July, 1931.''

On May 14, 1931, Annie M. Baker again notified Mrs. Lind as follows:

''I received *you* letter of the 9 and will say the *lese* is up on the 27 May, 1931 and I do not wish to extend it, you can write my son Vern Baker and he will write to you the same from

''ANNIE M. BAKER.''

On July 17, 1931, Annie M. Baker notified H. E. Lind and H. B. Lind in part as follows:

'' . . . you are in unlawful possession of the claims and property of Mrs. Annie M. Baker. . . .

''We demand that you vacate said premises at once. . . .

''Mrs. Baker has appointed C. A. Bell her agent to act for her in protecting her property as above described, and in seeing that nothing is taken therefrom or any further damage done to said property.

''ANNIE M. BAKER.

''CLARA R. CUSHMAN,
        Attorney.''

The fifth claim, ''Copper King,'' was included in the written offer. It was subsequently discovered that Annie M. Baker did not own this claim. Appellant seeks only to enforce the contract as to the claims determined to have been owned by her under the decision in *Lind* v. *Baker, supra.*

It is now argued by appellant that under the terms of the offer she was permitted to go upon the claims and examine them and make tests; that she had until December 20, 1930, to conduct these tests and could elect to proceed on or before that date; that in the event the tests were not satisfactory to her she was released from all liability; that if she elected to proceed after the tests had been made she was to pay $1,000 to Annie M. Baker on or before January 20, 1931; that on October 1, 1930, in writing, she advised Annie M. Baker that she was going to make the examinations and tests and approve or disapprove the claims on or before December 20, 1930; that an examination of the claims was made and on October 28, 1930, she in writing notified her that she approved the claims and accepted them at the price and under the terms proposed; that under the offer of September 27,

1930, Annie M. Baker promised to allow appellant to have possession of the claims in the event she elected to accept the offer; that Bell was in possession of the claims and refused to surrender possession to appellant or her agents; that because of this fact Annie M. Baker, on November 12, 1930, in writing, advised appellant that since appellant had not been able to gain possession of the claims the due date of the payment of the $1,000 would be deferred to such time as appellant could gain peaceful possession of the premises; that Annie M. Baker was never able to deliver possession to appellant; that on May 14, 1931, Annie M. Baker sent a communication to appellant's father, who was attorney-in-fact for appellant, advising that the ''lese'' (evidently meaning the offer and acceptance) would be terminated on May 27, 1931, and that it would not be extended; that no offer was made to deliver possession to appellant; that appellant did not at any time gain possession of the claims; that appellant did not accept the letter of May 14, 1931, nor the notice of July 17, 1931, as a rescission of the contract; that appellant was at all times ready, able and willing to take possession and pay the $1,000 when Annie M. Baker could deliver possession to her; that since the offer and acceptance was recorded on October 16, 1930, a lease, with an option to purchase, was entered into on August 30, 1932, by the Bakers with cross-defendants and respondents H. C. Ferris, Fred Sifford and W. L. Marsh; and that these cross-defendants had actual notice and knowledge of appellant's contract and took subject thereto.

It should be noted that after the plaintiff had filed and served his complaint a joint answer was filed by the Baker group and H. C. Ferris and Jane Doe Ferris. These defendants appeared through their own attorneys. Subsequently, and on August 22, 1934, the appellant filed her answer and cross-complaint in the action. The above-named defendants were also named cross-defendants in the cross-complaint. They were served with a copy of the cross-complaint on September 24, 1934, by serving their attorneys of record. They did not plead to appellant's cross-complaint. On February 13, 1936, an order to enter the defaults of these cross-defendants was filed by the appellant. Subsequently, and on February 14, 1936, the defaults of these cross-defendants were entered by the clerk. No attempt was made by

any of these cross-defendants to set aside these defaults. On July 14, 1936, a joint and separate answer of W. L. Marsh, H. C. Ferris and Fred Sifford was served and filed through their attorney Harry H. Parsons, denying that appellant had any rights in the lode claims. It alleges that Helen E. Lind is not the real party in interest in the cross-complaint but is a co-conspirator with H. B. Lind, her father, in obtaining title to the claims; that the Baker group were at all times since the 1st day of August, 1932, the owners and in possession of the claims; that while the cross-defendants Baker group were in possession and full ownership of the claims, the answering cross-defendants on August 30, 1932, entered into a written contract of sale of the claims, together with the machinery and equipment thereon for the sum of $30,000; that the contract was recorded on March 13, 1933; that on June 1st, 1934, this contract was merged into a final written contract between these same parties under the same conditions except as to amounts due on the balance of the purchase price; that the answering cross-defendants entered into possession of the claim, placed machinery thereon, developed the property, and expended sums of money thereon in excess of $17,500, up to the time this litigation started; that these expenditures were made in good faith for a valuable consideration and without notice of cross-complainant's claim or right to purchase or possess these claims; that the offer and acceptance and extension set forth in the cross-complaint have been repudiated and abandoned by the cross-complainant and the real party in interest, H. B. Lind, her co-conspirator, and have not been in force, effect, or validity at all in any particular since July 16, 1931; that the cross-defendants Baker group and answering cross-defendants' interests and claims are one and the same; that appellant knew that the answering cross-defendants had made the contract, entered into possession, and were making the improvements and expenditures, and designedly and silently permitted the same to be done and made until the development was arrived at and the properties became paying and valuable properties, without making any claim and without notice of any claimed right they had to possession or title to the claims, and that appellant should be estopped to insist on the claimed right asserted in her cross-complaint; that cross-defendants Baker group and the answering defendants were entitled to the

possession of and are the sole owners of the claims save as to the paramount title in the United States; and that cross-complainant does not come into court and seek equity with clean hands. Dismissal of the cross-complaint and judgment for defendants was sought by the answers.

At the trial on appellant's cross-complaint counsel for appellant, after offering certain evidence, moved the court to enter judgment against the defaulting cross-defendants. The court refused to grant the motion. The court then allowed counsel for respondents Marsh and Sifford to cross-examine appellant. After the evidence for all parties was submitted to the court appellant renewed her motion to enter judgment against the defaulting defendants. The court then ruled that it would "leave that under submission along with the other matters."

After the trial the entire matter was taken under submission by the court and subsequently the court found that the "second aspect of the case, by agreement of the respective parties in open court, was duly tried and submitted to the court . . . upon the cross-complaint of Helen E. Lind and the answers thereto of the above-named defendants and all of the defendants. And after hearing all of the testimony and evidence of all of the respective parties the cause was submitted to the court for findings, conclusions and decree." It then also found: "That all of the allegations and averments of the cross-complaint of Helen E. Lind are untrue and wholly unproven, and that the allegations and denials of the defendants above named in their answers and cross-complaints are true and wholly proven. That it is not true that the cross-complainant Helen E. Lind was ever ready, able and willing to pay the $1,000 in cash mentioned in her alleged option or contract to purchase; that it is not true that defendant Annie M. Baker ever refused to surrender possession of the mining claims to Helen E. Lind; that it is not true that defendants Sifford, Marsh and Ferris were wrongfully in possession thereof; that it is not true that Helen E. Lind is entitled to the possession of the mining claims or any part of them; and that it is not true that any of the defendants Baker group ever breached any contract with Helen E. Lind; that Helen E. Lind has failed to make out a case for any relief; that the property and lode claims are the property of the Baker group; and that Helen E. Lind has no right

of possession or title under the alleged contract or otherwise; that Helen E. Lind take nothing and that her cross-complaint be dismissed''; and that ''judgment is hereby ordered to be entered accordingly. Dated March 2nd, 1940.'' Judgment was thereafter entered and filed April 10, 1940. A discrepancy, for some unexplained reason, exists as to the date preceding the signature of the judge on the signed judgment. It recites: ''Dated this 10th day of January, 1940.'' This date was previous to the date of the signing of the findings. This was obviously an error as to the actual date on which the judgment was signed.

Appellant now, as her first point, seeks to take advantage of this error and contends that the court committed error in rendering the judgment two months prior to the time it made its findings of fact and conclusions of law, and that accordingly under the decision of *Easterly* v. *Cook*, 140 Cal. App. 115 [35 Pac. (2d) 164], the judgment was premature and void for the reason that the decision and findings had not been rendered in writing or signed by the judge as required by section 632 of the Code of Civil Procedure.

█ Under that section, whenever findings are required there can be no rendition of judgment until they are made and filed with the clerk. The decision of the court, referred to in section 632, when filed, amounts in law to rendition of judgment, though it is not the judgment itself. It is the written findings and conclusions which constitute the decision of the court. (*Fuhrman* v. *Superior Court*, 2 Cal. (2d) 250 [39 Pac. (2d) 802] ; *Prothero* v. *Superior Court*, 196 Cal. 439 [238 Pac. 357].) █ A judgment prepared and signed by the judge is not effective until it is filed with the clerk. Until then it is but a purpose in the breast of the judge which can be changed as he may determine. Until it is filed it does not become a record in the case and consequently it is not a judgment. (*Broder* v. *Conklin*, 98 Cal. 360 [33 Pac. 211].) Under section 664 of the Code of Civil Procedure, ''If the trial, in a superior or municipal court, has been had by the court, judgment must be entered by the clerk, in conformity to the decision of the court, immediately upon the filing of such decision. . . . In no case is a judgment effectual for any purpose until entered.'' █ Regardless of the date the judgment was signed in the instant case, it was filed with the clerk and entered subsequent to the signing and filing of the findings.

It was therefore not effective until it was thus filed and entered. In the case relied on by appellant, the judgment was *filed* before the findings and decision had been signed by the judge. The facts are not similar. There is no merit to this contention.

The second point presented, which is untenable, is that the court erred in refusing to enter a default judgment as and when demanded. Even though the contract between appellant and Annie M. Baker may be a valid contract, the remedy of specific performance is within the sound discretion of the court and is not a matter of absolute right. The enforcement of a contract by a decree for its specific performance rests in the sound discretion of the court, a judicial discretion to be exercised in accordance with established principles of equity with reference to the facts of the particular case. The contract may be valid in law and not subject to cancellation in equity and yet the terms thereof and the attendant circumstances may be such as to require the court to deny its specific performance. (*Hershey* v. *Los Angeles Pacific Co.,* 171 Cal. 353 [153 Pac. 230]; *Stiles* v. *Cain,* 134 Cal. 170, 171 [66 Pac. 231]; *O'Hara* v. *Wattson,* 172 Cal. 525 [157 Pac. 608]; *Lynch* v. *Bencini,* 17 Cal. (2d) 521 [110 Pac. (2d) 662]; *Goodyear Tire & Rubber Co.* v. *Miller,* 14 Fed. (2d) 776, 778; secs. 578, 579 and 585, Code Civ. Proc.)

The third point deserves more consideration and, in effect, is determinative of the previous and remaining points. It is contended that the contract between appellant and Annie M. Baker was a valid and enforceable agreement and that the court erred in not specifically enforcing it. It is respondents' contention that specific performance of a contract will not be granted when its nature is such that it is not mutually enforceable and the one seeking its enforcement could not be compelled to perform. This general rule needs little citation. (*Wheat* v. *Thomas,* 209 Cal. 306, 314 [287 Pac. 102]; sec. 3386 Civ. Code; *O'Brien* v. *O'Brien,* 197 Cal. 577 [241 Pac. 861].) The question then presented is this: Is the contract one coming within the rule and enforceable under sections 3390, 3391, 3392 and 3394 of the Civil Code?

Under section 3390, *supra,* an obligation to render personal service or an agreement the terms of which are not sufficiently certain to make the precise act which is to be done

clearly ascertainable cannot be specifically enforced. Under section 3391, *supra,* it cannot be enforced against a party if he has not received an adequate consideration for the contract or if it is not, as to him, just and reasonable. Under section 3392, *supra,* it cannot be enforced in favor of a party who has not fully and fairly performed all of the conditions precedent on his part to the obligation of the other party, with certain exceptions. The terms of the contract sought to be enforced herein may have been reasonably interpreted by the trial court to require that the appellant and cross-complainant, or her successors or assigns, after the payment of $1,000 in cash on or before January 20, 1931, or within the time as extended, pay a balance of $24,000 out of ''a royalty of one-tenth part of the gross proceeds derived by you or by your successors or assigns from the sale or shipment or milling of ore mined and sold or shipped from any of said lode mining claims.'' There is no provision for any payments to be made except out of royalties, but there is a requirement that the minimum royalty to be paid shall not be less than $100 per month. It is obvious that the appellant or her successors or assigns, under the terms of the contract are required to mine and mill or ship ore from the mining claims, and under its terms these mining operations may be required to continue for a period of twenty years or more, during all of which time it would be essential that the appellant mine and mill or ship ore from the mining claims and operate the site, improvements, buildings, hoists and equiment. In *Hupp* v. *Lawler,* 106 Cal. App. 121 [288 Pac. 801], the court said (p. 124):

''It is well to keep in mind that the controlling consideration and ultimate purpose governing and actuating the respondent was *the development of the quarry, and profitable sale of the product therefrom.*''

After stating the rule that the remedy of specific performance must be mutual and that the test of mutuality is whether the agreement is of such a character that at the suit of either, a court of equity would decree specific performance against the other, and after citing a number of cases, the court said (p. 125):

''Innumerable cases could be cited to the same effect. Many of these authorities cite Pomeroy on Contracts, section 312, where it is said:

" 'Finally, contracts which by their terms stipulate for a succession of acts, whose performance cannot be consummated by one transaction, but will be continuous and require protracted supervision and direction, with the exercise of special knowledge, skill and judgment in such oversight— such as agreements to repair or build, to construct works, to build or carry on railways, mines, quarries, and other analogous undertakings,—are not as a general rule specifically enforced.' " (See also *Stanton* v. *Singleton,* 126 Cal. 657 [59 Pac. 146].)

It has been held that where the liability of a person is limited to payment from a particular and special fund, if such fund does not exist, no payment can be enforced. (*Bagley* v. *Cohen,* 5 Cal. Unrep. 783 [50 Pac. 4].) Under the authorities cited and the possible interpretation of the contract, the appellant cannot be compelled by specific performance to conduct the mining operations and to mine and mill or ship the ores as required by the contract. For the reason that the contract is lacking in mutuality of enforcement and being manifestly unenforceable as to the appellant, she may not enforce it as to the respondents. The trial court therefore committed no error in refusing to find in favor of appellant.

The evidence indicates that appellant was never in possession of the mining properties. Appellant knew, on July 17, 1931, that respondent Annie M. Baker did not intend to carry out the purported contract. She delayed taking any action in relation thereto until she filed her cross-complaint on August 22, 1934, more than three years later. During all of this time she knowingly stood by and allowed the interests of other respondents to intervene, enlarge and mature. They expended approximately $20,000 in labor and money on the claims involved. The trial court found that appellant was estopped from enforcing the contract, apparently on the ground of laches or abandonment. This finding is supported by the evidence.

In *Gatley* v. *Shockley,* 215 Cal. 604 [12 Pac. (2d) 436], which is factually similar to the instant case, the court held that the defendant was guilty of laches where she remained inactive for approximately three years and failed to satisfactorily explain her inaction where, in the meantime, the plaintiff had re-leased the property to others. (See also,

*Akley* v. *Bassett,* 189 Cal. 625, 647 [209 Pac. 576].) As has been often said, there is no artificial rule as to the lapse of time or circumstances which will justify the application of the doctrine of laches. Each case, as it arises, must necessarily be determined by its own circumstances. (*Suhr* v. *Lauterbach,* 164 Cal. 591 [130 Pac. 2].) When a dilatory party fails to take action to enforce his equitable rights within a reasonable time under all the circumstances after he is on notice that the other party will not perform, such failure would ordinarily indicate that the dilatory party is thereafter in fact exercising his option to consider the contract abandoned by reason of the default or rescission of the other party. (*De Huy* v. *Osborne,* 96 Fla. 435 [118 So. 161].)

In *Morrow* v. *Coast Land Co.,* 29 Cal. App. (2d) 92 [84 Pac. (2d) 301], this court held that where it appeared that plaintiffs and their predecessors stood idly by without asserting any rights while defendants expended huge sums of money in developing the land to the point of oil discovery, a finding that plaintiffs and their predecessors were guilty of laches had sufficient evidentiary support. (See also *Lohn* v. *Fletcher Oil Co., Inc.,* 38 Cal. App. (2d) 26 [100 Pac. (2d) 505].) The question of laches or abandonment is one usually directed to the sound discretion of the trial court and in the absence of a sufficient showing of an abuse of such discretion, the court's finding thereon will not be disturbed on appeal. (*Lohn* v. *Fletcher Oil Co., Inc., supra,* p. 32.) No abuse of discretion appears.

The court also found that appellant failed to tender the initial payment of $1,000 before filing her cross-complaint for specific performance.

There is some merit to this contention but in view of the determination of the previous points discussed it becomes unnecessary to determine this question. Other points raised, technical in character, are without merit. The trial court was justified in denying appellant specific performance of the claimed contract and leaving her to her remedy, if any, at law.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.