[Sac. No. 6130. In Bank. Dec. 24, 1953.]

ROSEMOND M. PHILLIPS, Plaintiff and Appellant, v. GEORGE W. PHILLIPS, Defendant and Appellant.

Athearn, Chandler, Hoffman & Angell, Reginald G. Hearn and Angell, Hearn & Adams for Plaintiff and Appellant.

Chamberlain & Chamberlain, T. L. Chamberlain and F. L. Sinclair for Defendant and Appellant.

TRAYNOR, J.—Plaintiff Rosemond M. Phillips and defendant George W. Phillips were married in Mexico in 1934. On their first wedding anniversary, they had another cere-

mony in California to allay any question as to the validity of the marriage. In 1945 Rosemond secured an interlocutory decree of divorce on the ground of extreme cruelty, and a final decree was entered in 1946. A reconciliation followed, and the parties were remarried in May of that year. In July, 1948, they again separated, and Rosemond brought this action for divorce, alleging extreme cruelty. George denied the allegations of cruelty and filed a cross-complaint in which he prayed in the alternative for an annulment on the ground of fraud or for a divorce on the ground of extreme cruelty. Both parties alleged that reconciliation was impossible.

The trial court restrained George from disposing of the assets alleged to be community property and ordered him to pay stated amounts for Rosemond's costs and attorney fees and $300 per month alimony pendente lite. A few days later, this order was changed to provide for $350 per month alimony pendente lite and to restrain Rosemond from living in the family residence. Subsequently, the alimony was reduced to $150 per month.

Following a trial, the court filed the following memorandum on October 4, 1949:

"The Court finds from the evidence introduced in this case:

"1. That the defendant and cross-complainant has wrongfully inflicted upon the plaintiff and cross-defendant grievous mental suffering.

"2. That the plaintiff and cross-defendant has wrongfully inflicted upon the defendant and cross-complainant grievous mental suffering.

"It therefore follows that neither party is entitled to a divorce from the other.

"It is ordered that each party to this action be, and that they are hereby denied a divorce from the other.

"JAMES SNELL"

The memorandum was entered in the clerk's minutes but was not entered in the judgment book. Rosemond moved for a new trial and her motion was denied on November 26, 1949. On December 22, 1949, she filed a notice of appeal "from that certain part of the judgment in said action rendered on the 4th day of October 1949 whereby the plaintiff is denied a divorce from the defendant." The District Court of Appeal affirmed the "judgment" (*Phillips* v. *Phillips,* (Cal.App.) 236 P.2d 816), and this court granted a hearing. It was thereafter ascertained that a judgment had never been entered. After communication by the clerk of this court with

counsel and the trial court, new findings of fact and conclusions of law were signed by the trial judge and judgment was entered on October 14, 1952. The judgment denied each party a divorce on the same ground as did the memorandum of October 4, 1949. George filed a notice of appeal therefrom on December 12, 1952. Rosemond did not file a second notice of appeal.

Rosemond contends that George's appeal must be dismissed, on the grounds that the only valid judgment herein was the one that was rendered on October 4, 1949, and that George's notice of appeal, which was not filed until December 3, 1952, was filed too late.

Rosemond previously sought a writ of mandamus to compel the clerk of the Superior Court of Placer County to enter the memorandum of October 4, 1949, as a judgment. ■ The petition was denied by this court without opinion. (*Phillips v. Superior Court*, Sac. 6345, December 4, 1952.) That decision does not bar consideration here of Rosemond's contentions. (See *Funeral Directors Assn.* v. *Board of Funeral Directors & Emblamers*, 22 Cal.2d 104, 110 [136 P.2d 785].)

In support of her motion to dismiss the appeal, Rosemond contends that the written memorandum, signed and filed by the trial judge, constituted and was intended by the court to be a valid judgment disposing of the case. She states that it was the ministerial duty of the clerk to enter the judgment immediately and that the clerk's dereliction cannot impair the finality of the judgment to her prejudice. She also argues that the clerk of the trial court and George have accepted the memorandum as a judgment and George cannot now question it. Finally, she contends that the perfection of her appeal stayed all further proceedings in the trial court.

■ When, as here, findings of fact are required (*LaMar v. LaMar*, 30 Cal.2d 898, 900 [186 P.2d 678]) and have not been waived, judgment is not rendered until the findings have been signed by the trial judge and filed with the clerk. (*Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335, 347 [182 P.2d 182]; *Supple* v. *Luckenbach*, 12 Cal.2d 319, 323 [84 P.2d 52]; *Estate of Dodds*, 52 Cal.App.2d 287, 289 [126 P.2d 150]; *Easterly* v. *Cook*, 140 Cal.App. 115, 123 [35 P.2d 164]; see 29 Cal.L.Rev. 635, 637.) ■ Once the judgment has been rendered it is the duty of the clerk to enter the judgment in the judgment book. (Code Civ. Proc., § 632; *Baker* v. *Brickell*, 102 Cal. 620, 623 [36 P. 950]; *LaMar* v. *Superior Court*, 87 Cal.App.2d 126, 130 [196 P.2d 98]; *Hoover* v. *Les-*

*ter,* 16 Cal.App. 151, 153 [116 P. 382].) ▉ The memorandum that was signed by the trial judge, filed with the clerk, and entered in the clerk's minutes, contained findings of fact and conclusions of law separately stated and complied with section 632 of the Code of Civil Procedure. (See *Estate of Janes,* 18 Cal.2d 512, 514 [116 P.2d 438]; *Estate of Exterstein,* 2 Cal.2d 13, 15-16 [38 P.2d 151]; *Consolidated Irr. Dist.* v. *Crawshaw,* 130 Cal.App. 455, 462 [20 P.2d 119].) The filing of the memorandum, therefore, met the requirements for rendition of a judgment.

▉ It does not follow, however, that the memorandum is the judgment. Until a judgment is entered, it is not effectual for any purpose (Code Civ. Proc., § 664), and at any time before it is entered, the court may change its conclusions of law and enter a judgment different from that first announced. (*Brownell* v. *Superior Court,* 157 Cal. 703, 708 [109 P. 91]; *Crim* v. *Kessing,* 89 Cal. 478, 489 [26 P. 1074, 23 Am.St.Rep. 491]; *Lind* v. *Baker,* 48 Cal.App.2d 234, 244 [119 P.2d 806]; *Tilden Lbr. etc. Co.* v. *Bacon Land Co.,* 116 Cal.App. 689, 694 [3 P.2d 350].) ▉ Moreover, a judge who has heard the evidence may at any time before entry of judgment amend or change his findings of fact. (*Reimer* v. *Firpo,* 94 Cal.App. 2d 798, 800-801 [212 P.2d 23]; *Magarian* v. *Moser,* 5 Cal. App.2d 208, 210 [42 P.2d 385].)

▉ There is no merit to Rosemond's contention that since George, the clerk, and the trial court accepted the memorandum as a judgment, its validity cannot now be questioned. As this court stated in *Spencer* v. *Troutt,* 133 Cal. 605 [65 P. 1083], "the want of jurisdiction in this court over a premature appeal is absolute, and as consent cannot confer jurisdiction, the defect cannot be waived." (133 Cal. at 609; see *Fong Chuck* v. *Chin Po Foon,* 29 Cal.2d 552, 554 [176 P.2d 705]; *cf.* Rules on Appeal, rule 2(c).)

▉ The premature notice of appeal did not stay further proceedings in the trial court, since an appeal taken before entry of judgment does not confer jurisdiction upon the appellate court so as to divest the trial court of authority to take further proceedings. (*Spencer* v. *Troutt, supra,* 133 Cal. 605, 608-609; *Brady* v. *Burke,* 90 Cal. 1, 5 [27 P. 52].) "Acts of the trial court after the premature notice but before entry of judgment are valid." (Witkin, *New California Rules on Appeal,* 17 So.Cal.L.Rev. 79, 88.)

▉ Since the 1949 memorandum was not entered as a judgment, the trial judge had the power to substitute new

findings of fact and conclusions of law, and to enter a new judgment. The only judgment in this case is the judgment entered on October 14, 1952, and all issues in this case must be resolved on the basis of that judgment.

Rosemond contends that even if the memorandum is not the judgment herein, the judgment entered on October 14, 1952, should have been entered *nunc pro tunc* as of October 4, 1949, and for that reason also George's notice of appeal was filed too late. Since George was apparently satisfied with the purported judgment of October 4, 1949, and was willing to allow severable parts thereof not appealed from by her to become final and res judicata, she continues, it would give him an unfair advantage to allow him to appeal from the judgment subsequently entered.

The contention is wholly without merit. ▊ Even if the judgment were entered *nunc pro tunc,* a party's right to an appeal cannot be cut off by antedating the entry of the judgment from which he desires to appeal. (*Spencer* v. *Troutt, supra,* 133 Cal. 605, 607; *Bryant* v. *Superior Court,* 16 Cal. App.2d 556, 561 [61 P.2d 483]; see 30 Cal.L.Rev. 433, 449.) In any event, no reason has been shown why the judgment should be entered as of 1949. ▊ Courts have inherent power to enter judgments *nunc pro tunc* so as to relate back to the time when they should have been entered, but will do so only to avoid injustice. (*Norton* v. *City of Pomona,* 5 Cal.2d 54, 62 [53 P.2d 952]; *Scoville* v. *Keglor,* 29 Cal.App. 2d 66, 68 [84 P.2d 212]; see *Mather* v. *Mather,* 22 Cal.2d 713, 719 [140 P.2d 808].) In the present case, no "unfair advantage" will be allowed George if he is permitted to show that an adverse judgment is erroneous; he could change his mind and decide to appeal after judgment was entered in the case.

George has made a timely appeal from the judgment as a whole and this court has thereby obtained jurisdiction to review the entire judgment. ▊ It is necessary, however, to determine whether Rosemond has also appealed from the judgment, since it is the general rule that a party who has not appealed may not complain of errors. (*Mott* v. *Horstmann,* 36 Cal.2d 388, 393 [224 P.2d 11]; *Salter* v. *Ulrich,* 22 Cal.2d 263, 268 [138 P.2d 7, 146 A.L.R. 1344].) ▊ Rosemond filed her notice of appeal on December 22, 1949. The judgment was not entered until October 14, 1952, and she did not file a second notice of appeal. Rule 2(c) of the Rules on Appeal, as it read before the 1951 amendment thereto, pro-

vided: "A notice of appeal filed prior to entry of the judgment, but after its rendition, shall be valid and shall be deemed to have been filed immediately after entry." As we have previously pointed out, the memorandum complied with section 632 of the Code of Civil Procedure and constituted a "rendition" of judgment. Accordingly, Rosemond's notice of appeal must be deemed to have been filed immediately after entry of judgment.

The trial court found that each party had a cause of action of divorce against the other on the ground of extreme cruelty and denied each a divorce on the ground of recrimination. (Civ. Code, § 122.) The doctrine of recrimination may not be mechanically applied by a trial judge, but it is an equitable principle to be followed according to the circumstances of each case and with a proper respect for the paramount interests of the community at large. (*De Burgh* v. *De Burgh,* 39 Cal.2d 858, 870 [250 P.2d 598].) The trial court necessarily has a broad discretion. It must, however, give consideration to the prospects of reconciliation, the effect of the marital conflict upon the husband, wife, and third parties, and the comparative fault of the parties. (*De Burgh* v. *De Burgh, supra,* 39 Cal.2d at 873.)

 We have concluded that the doctrine of recrimination does not apply here. Both parties agreed that a reconciliation was impossible. The trial judge himself alluded to the "matrimonial wreck," observed that "I don't think it will be pleasant for them both to live in the same house," and by court order restrained Rosemond from staying at the family residence. The trial court made detailed findings concerning numerous acts of cruelty alleged in the complaint and in the answer and cross-complaint. It found that George frequently swore at and cursed Rosemond, that he became angry and objected to her course of conduct on numerous occasions, that he frequently expressed dissatisfaction with and belittled her in the presence of guests and friends, and that when Rosemond insisted that the family car have new tires before making a proposed trip to Oakland, George became angry and told her, "I hope you break your God damn neck." It found that after the second marriage Rosemond made statements to friends indicating that she had agreed to the reconciliation only because she hoped thereby to get most of George's money and property; that Rosemond took large sums of money from the place of business George operated at Lake Tahoe without his consent; that she carried

on a course of conduct designed to irritate and provoke him; that she was discourteous and disrespectful to patrons and guests at the place of business at Lake Tahoe, causing such patrons and guests to state to George that they would take their business elsewhere; that she criticized and embarrassed George in the presence of friends; and that she told their friends on many occasions that he was crazy. The findings are supported by substantial evidence.

This marriage is the second between the parties that has failed. The seriousness and frequency of their misconduct and the nature of the charges made at the trial, including the many unfounded accusations that were made by both parties and found to be false by the trial judge, indicate that there is little possibility that they will ever be able to overcome their differences and live together harmoniously. The marital conflict has a serious effect upon the parties. George suffers from a heart condition, for which he receives disability compensation, and continued discord may have harmful results. Financial considerations may not be entirely ignored, and it appears that the conduct of the parties may destroy the business of the resort and their livelihood.

It is clear from the evidence and the findings that the legitimate objects of the marriage have been destroyed. No public policy would be served by denying a divorce because each party was guilty of extreme cruelty toward the other. It is a degradation of marriage and a frustration of its purposes to use it as a means of punishing the parties to the divorce action. In our opinion, the trial judge should not have denied the parties a divorce on the ground that recrimination had been shown. The judgment must therefore be reversed. On retrial, the court may determine whether one or both parties shall receive the divorce. (*De Burgh* v. *De Burgh, supra,* 39 Cal.2d 858, 873.)

George contends that the trial court should be directed to enter judgment that a certain purported agreement between him and Rosemond is void and that there is no community property. Rosemond contends that the trial court should be directed to enter judgment that the agreement is valid and that all their property is community. These questions were put in issue by the pleadings, but since the trial court denied both parties a divorce, it did not resolve them. Since the judgment must be reversed, these issues will be decided on the retrial of the cause.

Rosemond contends that the trial court abused its discretion by reducing alimony pendente lite from $350 per month during the trial to $150 per month on appeal. Since no appeal was taken from the order fixing the amount to be paid pending appeal, we are without jurisdiction to review that order.

The motion to dismiss the appeal is denied. The judgment is reversed.

Gibson, C. J., Carter, J., and Schauer, J., concurred.

EDMONDS, J.—I would affirm the judgment for the reasons stated by me in *De Burgh* v. *De Burgh,* 39 Cal.2d 858, 874 [250 P.2d 598].

Spence, J., concurred.

SHENK, J.—I dissent. However desirable a change in the public policy of this state on the subject of recrimination may be thought to be, I feel impelled to adhere to the views stated by me in *De Burgh* v. *De Burgh,* 39 Cal.2d 858, 882 [250 P.2d 598]. The legislature established the state policy in 1872 by the enactment of section 111 of the Civil Code where it is provided that: ''Divorce must be denied upon showing . . . 4. Recrimination.'' That policy continued until 1952 when this court in the De Burgh case ruled otherwise. The Legislature has the first right to establish the public policy of the state. When it has spoken on a subject so peculiarly within its dominion and in no uncertain terms it is incompetent for the court to declare otherwise.