NEWELL v. NEWELL.
CUNDIFF v. CUNDIFF.
McPHERSON v. McPHERSON.

[Cite as Newell v. Newell, 21 Ohio Misc. 239.]

(Nos. DR-54214, DR-54296 and DR-54401—Decided November 12, 1969.)

Domestic Relations Division, Common Pleas Court of Stark County.

*Mr. Alex D'Aurora*, Stark County Legal Aid Society, for plaintiff.

MILLIGAN, J. These three divorce cases, wherein publication was had, involve the same question of law and similar facts. They have all been presented to the court by the Legal Aid Society, and represent cases where women were long ago deserted by their husbands and fathers of their children; and where, subsequently, they have had illegitimate children and now seek a divorce. The court finds:

(1) In *Case No. DR-54214*, Jimmie Newell deserted his wife and two children in 1956. Plaintiff has been on Aid for Dependent Children much of the time since. In 1962, plaintiff had an illegitimate child. She claims she had been faithful until the conception of said child.

(2) *In Case No. DR-54296*, Thomas Cundiff deserted his wife and seven children in 1962. In 1965, his wife gave birth to a child, of which defendant is not the father. Plaintiff has had a great deal of trouble in raising her

children and has had frequent contacts with the Juvenile Court. She is a recipient of Aid for Dependent Children.

(3) In *Case No. DR-54401*, Benjamin McPherson deserted his wife and six children in 1965. One of the children is with plantiff's father in Texas. On January 23, 1969, plaintiff gave birth to a child, of which defendant is not the father. The father of this illegitimate child is supporting him, and the plaintiff is otherwise employed.

### Issue

May the Common Pleas Court grant divorce relief against a deserting father and husband, where it is clear that the plaintiff has been guilty of the recriminatory defense of adultery?

### Law

These three cases demonstrate the dilemma faced by the trial court when bound by doctrines of recrimination or "clean hands." Curiously, Ohio is among the minority of states that apply the doctrine virtually without regard to the welfare of the parties or their children.

"Divorce is a reward for innocence and a penalty for fault." The Ohio law springs from a philosophy little more sophisticated than this. Thus, a party guilty of misconduct may not get a divorce, even where both parties want it and the court believes it ought to be granted.

The doctrines of "clean hands" and recrimination need to be re-examined in the light of (a) the often tragic results, (b) changes of laws in other states, and (c) the public relations of the bar and bench.

The majority of states that have faced the issue of whether a trial court may grant a divorce to either or both parties in the event of mutual misconduct have answered in the affirmative. Annotation, 13 A. L. R 3d 1366. The rationale behind such rulings includes:

(1) The trial judge is granted broad discretion in matrimonial cases as an equity court.

(2) There is no prejudicial error when the court grants a decree to both parties, for the parties are still divorced in the event of reversal upon appeal of a decree in favor of one of the parties.

(3) There is nothing in most statutes that would

prohibit granting a divorce decree to both parties, or to one party, even though that party was guilty of misconduct.

Other states, including Ohio, have denied such authority, generally reasoning:

(1) Recrimination precludes relief to the guilty party as a time-honored practice.

(2) To obtain relief, a party must be free from personal fault; *i. e.,* have "clean hands."

The unqualified application of the doctrines of recrimination and "clean hands" to deny divorce relief, when both parties are guilty of misconduct, was broken in California around 1952. Denial of a divorce where both parties are guilty of cruelty was reversed and remanded on appeal. The Appellate Court ruled that either or both could be granted a divorce. In determining the case, the Appellate Court stated that the trial court could consider (a) the prospects of reconciliation, (b) the effect of marital conflict upon the parties and third parties, and (c) the comparative guilt of the parties as bearing upon whether one or both should be granted relief. *Deburgh* v. *Deburgh* (1952), 39 Cal. 2d 858, 250 P. 2d 598. Accord: *Hendricks* v. *Hendricks* (1954), 125 Cal. App. 2d 239, 270 P. 2d 80; *Phillips* v. *Phillips* (1953), 41 Cal. 2d 869, 264 P. 2d 926 (where "legitimate objects of marriage had been destroyed and public policy would not be served by denying a divorce," it was error for the trial court to deny a divorce to one or both parties).

The Washington Supreme Court has said that a mutual decree of divorce does not prejudice the parties, for they are no less divorced where only one party is granted relief. *Schirmer* v. *Schirmer* (1951), 84 Wash. 1, 145 P. 981.

In its current state, the Ohio law is diabolically contrary in both its result and its rationale. Recrimination does apply and need not be pleaded. *Sandrene* v. *Sandrene* (1952), 67 Ohio Law Abs. 481. Recrimination may be applied to defeat the plaintiff in an uncontested divorce case, although it has not been pleaded. *Lewis* v. *Lewis* (1956), 103 Ohio App. 129. Maier, Ohio Family Law, page 125.

"One who comes into court seeking a divorce must

come with clean hands, and this doctrine applies to both parties to the litigation." *Morris* v. *Morris* (1938), 27 Ohio Law Abs. 84; *Phillips* v. *Phillips* (1933), 48 Ohio App. 322; *Keath* v. *Keath* (1946), 78 Ohio App. 517.

The concepts of recrimination and "clean hands" have been extended to deny the use of the "compartive rectitude" doctrine. The court may not measure and compare the fault of the parties. *Keath* v. *Keath* (1946), 78 Ohio App. 517; *Sandrene* v. *Sandrene* (1952), 67 Ohio Law Abs. 481.

The thinking of the Ohio courts is characterized by the following excerpt:

"Whether the trial court thinks it would be better for the parties to have a decree of divorce is not a controlling consideration. There is involved in every divorce case a question of public policy arising out of the principle that the family relation is the basis of organized, civilized society and should be preserved until such time as it appears to the court in a divorce proceeding that a legal right to a divorce has been established. Moreover, the doctrine of public policy is carried so far in its application that the courts hold a party has no vested right to a divorce merely because a legal ground therefor is made out against the adverse party. There must not only be an injured party and a guilty party, but the injured party must be free from fault amounting to a legal ground for divorce before the court is warranted in granting such party a decree of divorce. Of course, an action for divorce is not strictly a chancery proceeding, but * * *." *Phillips* v. *Phillips* (1933), 48 Ohio App. 322.

The Court of Appeals severely chastised the trial court for finding both parties guilty of gross neglect and granting each a divorce.

Nowhere is the discrepancy between realism and legalism more dramatic than in the divorce trial arena.

The reality is that marital disintegration is more often than not a result of mutual fault. The husband who stops at the tavern on the way home from work and over-indulges often faces a shrew when he enters his home. The adul-

tering wife is often married to an abusive husband. The adultering husband often leaves a frigid wife at home.

In two of the instant cases, the County Welfare Department is involved, and the dynamic of public assistance is revealed. County Welfare Departments can cite dozens of such cases where the father of the newborn child is often willing to adopt all of the children and support them, but cannot do it because of the doctrine of recrimination. The children thus continue to receive public assistance, and the parents live meretriciously thereafter.

The reality is that the great bulk of all divorces granted each year (approximately 30,000 in Ohio in 1968) are uncontested. Only one side is heard by the court. Approximately 95% of all divorces are in this category. Perjury committed in many such cases undermines respect for the administration of divorce justice and makes a frequent farce of our divorce courts. For thousands of people each year, this is their only contact with the law. What is their impression?

Conversely, the reality is that where the case is contested, the court often grants no relief. It finds either no fault or mutual fault. A common public cry is: "Divorce is too easy to get." The reality is that when the court knows the whole truth, divorce in Ohio is almost impossible to get. Every practicing attorney is aware that the threat of dismissal of a hopeless case has forced a settlement, wherein one party "plays dead," and the other proceeds, uncontested, to procure a divorce.

These realities make a "charade" of too many divorces.

Public policy is in nowise served by a law that "strong arms" parties, literally denying them a day in court, and frequently denying the court the truth.

Denial of relief often condemns the parties to a lifetime of requitted terror. If there was ever any hope—in the public interest—of reconciliation, this hope is surely dimmed when the parties in a prolonged trial run all the dirty linen up the evidentiary flagpole.

The court cannot see how public policy or the public

image of the law is promoted by blind adherence to an archaic canon of common law and equity denying relief to wrongdoers, particularly where the result is contrary to the mature wishes of both parties and the best interests of third persons, especially children.

It should be noted that dismissal of such cases deprives the trial court of any jurisdiction to make protective orders controlling alienation of property, payment of marital bills, custody of children, visitation of children, support of dependents, or control of tortuous behavior. Maier, Ohio Family Law, page 165; *Szaras* v. *Szaras* (1959), 110 Ohio App. 103; *Holderle* v. *Holderle* (1967), 11 Ohio App. 2d 148. Such result is certainly not consonant with the public welfare or the exercise of equitable authority.

The "clean hands" and recrimination concepts are rooted in case law, not in the statute.

"The court of common pleas *may* grant divorces for the following causes * * *" (Emphasis added.) Section 3105.01, Revised Code.

It is submitted that the time has come for the trial and the appellate benches of the state of Ohio to take a new look at the doctrines of recrimination and "clean hands" and, using their equity authority, discreetely and appropriately grant relief to either or both parties in those cases where it is clear that the marital relationship is severed and the best interests of the parties and their children would be served by granting the relief they seek.

CONCLUSION

The trial court is bound to follow the statutory and case law of the state of Ohio. Therefore, despite the arguments enumerated above, it is the judgment of this court that the divorce in each of these cases be denied, with exceptions to the plaintiffs.

It is expected that the Court of Appeals will be given an opportunity to review the issue presented herein.

*Judgments for defendants.*