BILL McDONALD, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent McDonald v. Commissioner
Docket Nos. 14892-91, 14893-91, 25835-91, 13119-92, 13120-92
United States Tax Court
T.C. Memo 1994-607; 1994 Tax Ct. Memo LEXIS 615; 68 T.C.M. (CCH) 1400; December 12, 1994, Filed *615 Decision will be entered under Rule 155. For petitioners: Roderick L. McKenzie. For respondent: Kathryn K. Vetter and Bruce E. Gardner. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: In these consolidated cases respondent determined deficiencies in and additions to the Federal income taxes of the individual petitioners and the corporate petitioner as follows: Petitioner Bill McDonald: Docket Nos. 14892-91; 13119-92
Additions to Tax
Sec. Sec. Sec.
Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661
1987
$ 65,629
$ 49,222
[1]
$ 16,407
1988
40,070
30,053
--
10,018
Petitioner Richard D. Maynard: Docket Nos. 14893-91; 13120-92
Additions to Tax
Sec. Sec. Sec.
Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661
1987
$ 69,618
$ 52,439
[1]
$ 17,480
1988
46,897
35,173
--
11,724
Petitioner Gold Country Financial, Inc.: Docket No. 25835-91
Additions to Tax
Taxable
Year
Sec.
Sec. Sec.
Sec.
Ended
Deficiency 6653(a)(1)(A) 6653(a)(1)
6653(a)(1)(B) 6661
1988
$ 10,650
$ 533
$ --  [1]
$ 2,663
1989
20,764
-- 1,038
--
5,191
*616 After concessions, [2] the issues for decision are: (1) Whether petitioner Gold Country Financial, Inc.'s (hereafter GCF, Inc.) corporate status should be disregarded for Federal income tax purposes. We hold that it should not be disregarded. (2) Whether petitioner GCF, Inc., is entitled to deduct expenses in excess of the amounts allowed in the notice of deficiency. We hold that it may not. (3) Whether petitioners have unreported client-fee income. We hold that they do to the extent stated herein. (4) Whether petitioners have unreported non-client-fee income. We hold that they do to the extent stated herein. (5) Whether the allocation of M & M partnership income was proper. We hold that it was proper. (6) Whether petitioner McDonald's filing status for the years in issue was married filing separate or single. We hold that his status was married filing separate. (7) Whether petitioner Maynard may deduct a net operating loss and claim a general business credit carryforward. We hold that he may not. (8) Whether petitioners McDonald and Maynard are liable for the addition to tax for fraud pursuant to section 6653(b). [3] We hold that they are liable for fraud. (9) Whether *617 petitioner GCF, Inc., is liable for the addition to tax for negligence pursuant to section 6653(a). We hold that it is liable for negligence. (10) Whether petitioners are liable for the addition to tax for substantial understatement of income pursuant to section 6661. We hold that they are liable for substantial understatement of income to the extent stated herein. *618 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition herein was filed, petitioner McDonald resided in Sacramento, California, petitioner Maynard resided in Roseville, California, and petitioner GCF, Inc., a California corporation, had its principal place of business in Sacramento, California. Petitioners McDonald and Maynard filed individual income tax returns for all years in issue. Petitioner GCF, Inc., filed a corporate income tax return using a fiscal year ending July 31 for the years in issue. Petitioner GCF, Inc., is an accrual method taxpayer. References to petitioner(s) are to either McDonald, Maynard, GCF, Inc., or any combination thereof, as the context requires. Petitioner McDonald is a certified public accountant with over 40 years of experience in accounting. He is also an attorney licensed to practice law in the State of Oklahoma. Petitioner Maynard is a certified public accountant with over 20 years of experience in accounting. During the taxable years in issue, McDonald and Maynard were partners in the Maynard and McDonald (hereafter M *619 & M) partnership. There was no written partnership agreement. M & M is in the business of preparing tax returns, providing assistance to clients in tax-related matters, and providing accounting services. Maynard and McDonald represented clients during audits by the Internal Revenue Service and at Appeals conferences. McDonald also files Tax Court petitions on behalf of clients. McDonald prepared the tax returns for M & M for the years in issue. The books and records for M & M for each of the years consisted of a single sheet of paper reflecting the income on a monthly basis. M & M did not provide copies of bills, client ledger cards, or any other records of income to respondent's agent. M & M did not keep a cash receipts journal, a cash disbursements journal, a general journal, purchase invoices, or a client list. M & M did not maintain a business checking account. M & M sent bills or statements to some (but not all) of its clients for services rendered. M & M did not keep these billing statements after they were paid. M & M performed some services gratuitously. In 1980, both Maynard and McDonald were experiencing financial difficulties. McDonald filed a petition in bankruptcy *620 in December 1980 and Maynard filed a petition in bankruptcy in April 1981. Maynard asked his friend, Terry Feil, to set up GCF, Inc. GCF, Inc., was formed to separate petitioners' professional billings and avoid the risk of attachment by creditors. GCF, Inc., prepared tax returns and provided accounting services. Feil, a stockbroker, was the president and sole shareholder. Feil never received any dividends. McDonald kept the books and prepared the tax returns for GCF, Inc. GCF, Inc., opened a bank account at Merchant's National Bank on or about August 16, 1980. The books for GCF, Inc., consisted of a cash disbursements journal and a ledger showing yearend entries that adjusted income to reflect deposits into the bank account. The deposits consisted of payments from clients of M & M and GCF, Inc. The gross receipts reported on GCF, Inc.'s tax return were calculated by adding up the deposits to the bank account, adjusting for changes in accounts receivable and accounts payable, and subtracting insurance reimbursements, auto expenses, dues and publications, outside services, and refunds. In May 1986, GCF, Inc., opened another bank account at the Bank of Lodi. Feil did not *621 know about this account. [4] The amounts deposited into this account consisted of checks made out to M & M and GCF, Inc., representing payments received from clients. Deposits into the account were not included in gross income on the returns filed by GCF, Inc., for the years ended 1988 or 1989. Checks written on the account were written to Maynard and McDonald, except for two checks that were written to Mary Lee Sharer (McDonald's daughter) in 1987. Petitioners did not disclose this bank account to respondent's agent. On or about August 26, 1985, GCF, Inc., opened an account at Bateman, Eichler, Hill and Richards (BEHR account). On October 13, 1988, James A. and Norma Jean McIssac (the McIssacs) borrowed $ 75,000 from GCF, Inc., Mary Charles McDonald, Mary Lee Sharer, and Betty Shackelford. The McIssacs executed a note in the principal amount of $ 75,000 and bearing an 11.5-percent rate of interest to the noteholders. Each holder had *622 a one-quarter interest. The note provided for monthly payments of interest only. Deposits into the BEHR account for the years in issue represent 25 percent of the interest paid on the McIssac note. GCF, Inc., did not report these amounts as interest income on its tax return. Petitioners did not disclose the BEHR account to respondent's agent. On or about January 5, 1987, M & M opened a checking account at the Bank of Alex Brown in the name Maynard and McDonald Trust (hereafter M & M Trust). In 1988, the M & M Trust account earned interest that was not reported by Maynard or McDonald on their tax returns. Petitioners did not disclose this bank account to respondent's agent. Petitioners maintained accounts known as the Clamper Investment Club account, M & B Investments Club account, and P & M Investment Club account. Deposits were made into the accounts during the years at issue. The income from these investment accounts was not reported on a partnership return, corporate return, or other information return. Maynard was the general partner in Denver Associates and Nolan Associates, limited partnerships which operated eight submarine sandwich shops (hereafter sub-shops). *623 The sub-shops were not financially successful. By 1979 and 1980, the partnerships were falling behind on their obligations. Some of the lessees and other creditors filed suits against the partnerships and the partners for amounts due. The sub-shops ceased operating by the end of February 1980. Maynard deducted net operating loss carryforwards attributable to these entities on his 1987 and 1988 Federal income tax returns. Petitioner McDonald and Mary Charles McDonald were married in 1948. Mary Charles McDonald filed a petition for dissolution of marriage, and an interlocutory judgment of dissolution of marriage was entered on June 6, 1975. No further court action was taken until May 18, 1993, when a judgment of dissolution was entered nunc pro tunc as of December 1, 1975. Between 1975 and 1993 petitioner and Mary Charles lived together and held themselves out as married, and petitioner sought the nunc pro tunc order only shortly before trial. Respondent issued statutory notices of deficiency to petitioners. In the notice to petitioners McDonald and Maynard, respondent determined deficiencies in petitioners' 1987 and 1988 Federal income tax in regard to unreported income; self-employment *624 tax; [5] and additions to tax for fraud and substantial understatement of tax. In addition, respondent determined deficiencies in petitioner McDonald's tax in regard to Social Security benefits, [6] and in petitioner Maynard's tax in regard to the disallowance of losses from partnerships; the disallowance of net operating loss deduction carryforwards; and the disallowance of general business credit carryforwards. In the notice to petitioner GCF, Inc., respondent determined deficiencies in petitioner's tax year ended 1988 and 1989 Federal income tax in regard to unreported income, disallowance of deductions, disallowance of a general business credit carryforward, and additions to tax for negligence and substantial understatement of tax. OPINION Issue 1. Disregard of Corporate Entity
Petitioners *625 argue that GCF, Inc., was engaged in the business of preparing tax returns and should be respected as a separate entity. [7] Respondent contends that GCF, Inc., was not created for a valid business purpose, it did not observe State law or corporate formalities, and there was commingling of funds. Therefore, it should be disregarded. It is a well-settled principle of tax law that a corporation which engages in business activity generally will be respected as a separate entity. Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Burnet v. Commonwealth Improvement Co., 287 U.S. 415 (1932). *626 In Moline Properties, Inc. v. Commissioner, supra at 438-439, the Supreme Court set forth the following principle: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. [Fn. refs. omitted; emphasis added.]
Based on a long line of cases both in this Court and in other courts, we have concluded that a corporation's separate tax identity will not be disregarded if (1) the corporation served an intended business function or (2) actually engaged in business. See Dooley v. Commissioner, T.C. Memo. 1984-548. The two-part analysis is disjunctive, so that if either part is satisfied, the corporation's tax existence is established. Carver v. United States, 188 Ct. Cl. 202, 412 F.2d 233 (1969); *627 Dooley v. Commissioner, supra.Furthermore, the corporate business purpose or the quantum of business activity required for recognition of the separate existence is generally rather minimal. Hospital Corp. of America v. Commissioner, 81 T.C. 520, 579-580 (1983); Strong v. Commissioner, 66 T.C. 12, 24 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977). In fact, it is rare that a corporation's tax identity (short of an absolute sham) will be ignored. Dooley v. Commissioner, supra.Lack of compliance with formalities or with State laws will not affect our conclusion if we find that the corporation satisfies one part of the two-part analysis. United States v. Creel, 711 F.2d 575, 579-580 (5th Cir. 1983); Evans v. Commissioner, 557 F.2d 1095 (5th Cir. 1977), affg. T.C. Memo. 1974-267; Dooley v. Commissioner, supra.Nor will the fact that the corporation has as its primary business the *628 rendering of personal services. Divine v. United States, 10 AFTR 2d 5403, 62-2 USTC par. 9632 (W.D. Tenn. 1962). Consequently, a taxpayer having chosen the advantages of a corporation in which to do business must also accept the disadvantages of that choice. Higgins v. Smith, 308 U.S. 473, 477 (1940). In contrast the corporation will be ignored if it is a sham used solely for tax avoidance purposes. Ogiony v. Commissioner, 617 F.2d 14, 16 (2d Cir. 1980), affg. and remanding T.C. Memo. 1979-32; Jackson v. Commissioner, 233 F.2d 289, 290-291 (2d Cir. 1956), affg. 24 T.C. 1 (1955); Noonan v. Commissioner, 52 T.C. 907, 910 (1969), affd. per curiam 451 F.2d 992 (9th Cir. 1971). GCF, Inc., provided tax services to clients, prepared and signed tax returns, rented office space, received fees and made deposits, paid bills, and filed its own tax returns. We do not find that the use of the corporate entity was solely for tax avoidance purposes. *629 In contrast, we find merit to petitioners' explanation for forming the corporation, that is, to continue their tax service business by facilitating billing procedures and obtaining credit notwithstanding their past financial difficulties. Based on the record before us, we hold that GCF, Inc., was formed for the purpose of carrying on petitioners' trade or business. And in fact, GCF, Inc., did carry on the accounting business as evidenced by the tax return services provided. Accordingly, we hold for petitioners and will recognize GCF, Inc., as a separate taxable entity. Having concluded that GCF, Inc., should be treated as a separate taxable entity, we must determine whether it is entitled to deduct expenses as listed on its tax return and whether it has unreported income. Issue 2. Deductibility of Expenses -- Petitioner GCF, Inc.
Respondent has disallowed deductions taken by GCF, Inc., for automobile expenses, expenses relating to the filing of Tax Court petitions, health insurance and other medical expenses, and other amounts deducted as dues and publications. Taxpayers in each instance bear the burden of proving the Commissioner is incorrect in her determinations. *630 [8] Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Moreover deductions are a matter of legislative grace, and taxpayers seeking a deduction must be able to show that the deduction comes within the express provisions of the statute. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). A taxpayer can deduct all ordinary and necessary expenses paid during the year in carrying on any trade or business. Sec. 162(a). However, taxpayers are required to keep such records as the Secretary deems sufficient to show whether or not such taxpayer is liable for tax. Sec. 6001. A taxpayer is responsible for substantiating the amount of a deduction claimed, and if the taxpayer fails to do so, the Commissioner is justified in denying the deduction. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). *631 Section 274(d)(4) provides that no deduction is allowable with respect to any listed property unless certain substantiation rules are satisfied. A passenger automobile is listed property as defined in section 280F(d)(4)(A)(i). A taxpayer must substantiate the amount of business and total use of the listed property, the date of the expenditure or use, and the business purpose for the expenditure or use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The Court cannot estimate deductions for the use of listed property. Walker v. Commissioner, T.C. Memo. 1992-416. In the instant case, evidence offered by petitioners consisted of self-serving testimony and a sheet of paper with amounts paid to petitioner McDonald during tax year 1988. It appears that approximately 1,000 miles per month may have been incurred for business. However, there is no adequate substantiation as to the number of miles, the business purpose, or when, during the month, the miles were incurred. In addition, there is no evidence as to the other amounts of the auto expenses deducted. Petitioner GCF, Inc., has not *632 complied with the section 274(d)(4) substantiation rules; accordingly, we sustain respondent's disallowance. Petitioner deducted amounts representing Tax Court filing fees paid on behalf of its clients. Respondent disallowed these deductions because petitioner did not prove that they were not reimbursed. As we have stated, petitioner bears the burden of proving that respondent's determinations in the statutory notice of deficiency are erroneous. Rule 142(a). Petitioner has not offered any evidence and therefore has not met its burden of proof. We sustain respondent's disallowance. Respondent has disallowed deductions for health insurance paid on behalf of Maynard, McDonald, and Sharer. Petitioner asserts that the expenses are deductible because they meet the tests for "ordinary and necessary" business expenses. Generally, a deduction is allowed for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Sec. 162(a). However, except as otherwise provided, no deduction shall be allowed for personal, living, or family expenses. Sec. 262(a). With respect to payments to employees, amounts paid or accrued within *633 the taxable year for sickness, hospitalization, medical expense, or similar benefit plan are deductible under section 162(a) if they are ordinary and necessary expenses of the trade or business. Sec. 1.162-10(a), Income Tax Regs.
Petitioners have not offered evidence to establish that the amounts paid on behalf of Maynard, McDonald, and Sharer were ordinary and necessary business expenses and not the personal expenses of these individuals. There is nothing in the record to show that Sharer performed services for GCF, Inc. There is no evidence to show that GCF, Inc., had a medical plan. There is nothing in the record to show that the payments were compensation for services rendered. And there is no evidence to show that Forms 1099 for nonemployee compensation were issued. Petitioners have not met their burden of proof on this issue; we sustain respondent's disallowance. Respondent disallowed dues and publication expenses in the total amount of $ 249. Petitioner McDonald testified that expenses for entertainment were included in this amount. Apart from petitioner's self-serving testimony, no evidence was submitted to support the deductions. We sustain respondent's disallowance. *634 Issue 3. Unreported Client-Fee Income -- Petitioners GCF, Inc., McDonald, and Maynard
Respondent determined that petitioners' books and records were inadequate to properly reflect their income. Respondent claims that petitioners did not include all client fees in income. [9] Respondent reconstructed petitioners' income by use of the bank deposits method. *635 Section 61(a) defines gross income as "all income from whatever source derived," including gross income derived from business. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Every person liable for any tax must maintain books and records sufficient to establish the amount of gross income. Sec. 6001; Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). The Commissioner's determination has a presumption of correctness, and the presumption may be rebutted only if the taxpayer proves by a preponderance of the evidence that the deficiency is incorrect or was arbitrarily derived. Clark v. Commissioner, 266 F.2d 698, 706 (9th Cir. 1959). Generally, the Commissioner may use a method of reconstruction that clearly reflects income. Sec. 446(b); Holland v. United States, 348 U.S. 121 (1954). And the reconstruction of income need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530 (1970). *636 If the taxpayer believes the Commissioner's method of computation is unfair or inaccurate, the burden is on the taxpayer to show such unfairness or inaccuracy. DiLeo v. Commissioner, supra at 871. In addition, the use of the bank deposits method for computing income has long been sanctioned by this Court. Clayton v. Commissioner, 102 T.C. 632, 647 (1994); DiLeo v. Commissioner, supra; Estate of Mason v. Commissioner, supra. When a taxpayer keeps no books or records, has large bank deposits, and offers no plausible explanation of such deposits, the Commissioner is not arbitrary or capricious in resorting to the bank deposits method for computing income. Hague Estate v. Commissioner, 132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); Estate of Mason v. Commissioner, supra.Bank deposits are prima facie evidence of income. DiLeo v. Commissioner, supra at 868; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). *637 The bank deposits method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income. DiLeo v. Commissioner, supra.However, when the bank deposits method is employed, "'the Government must take into account any non-taxable source or deductible expense of which it has knowledge.'" Id. at 868 (quoting Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964)). Petitioners bear the burden of proving that respondent's determination of underreported income, computed using the bank deposits method of reconstructing income, is incorrect. DiLeo v. Commissioner, supra at 869; Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). Petitioners did not keep adequate books and records; they provided respondent's agent with only two summary sheets of paper showing income for the years at issue. They did not provide copies of returns prepared for clients or maintain a list of returns that they prepared *638 for clients. Petitioners disclosed only one of their bank accounts, the Merchant's account, to respondent's agent. We sustain respondent's determination in reconstructing petitioners' client-fee income. To locate nondeposited client fees, respondent's Agent Pease made inquiries of petitioners' clients. Pease used the aid of Internal Revenue Service Center listings of returns that were filed and prepared by GCF, Inc., or the M & M partnership. And based upon client responses (i.e., copies of checks, copies of invoices, or phone calls) he added to the income reconstruction. In addition, Pease made some assumptions and estimates in arriving at income. He would include as income, amounts deducted on clients' tax returns attributable to tax preparation. And in the situation where the only information available was a tax return that was filed and prepared by petitioners, Pease assumed a fee of $ 250. This amount was arrived at from a rate sheet that was provided by one of petitioners' clients. Petitioners take exception to the income reconstruction. They argue that inaccuracies exist. In petitioners' reply brief, they make reference to those instances where the assumed fee of *639 $ 250 was in excess of the amount actually received or in excess of the amount that would normally be charged for a return of that type, or the return was prepared for no fee. Petitioners have presented evidence, including testimony, client responses, and tax returns prepared by another preparer. Where petitioners' testimony is corroborated by other documentary evidence, we hold that petitioners have met their burden as to those adjustments. However, considering the case as a whole, we do not find that respondent's reconstruction was arbitrary or capricious. Respondent asserts that the $ 7,000 in fees attributable to the McIssac receivable is income to petitioners because it represents client fees owed to M & M. However, respondent does not claim that such fees were received in the years at issue. Generally, an item of gross income shall be included in the gross income for the taxable year in which it is received by the taxpayer. Sec. 451(a). Accordingly, we hold that the $ 7,000 in fees is not properly includable in income for petitioners Maynard and McDonald because petitioners reported their income under the cash basis method of accounting for the years in issue. As to *640 $ 15,000 in fees from the Vaughts, petitioners contend that $ 13,338 is not fee income, but rather is a payable to the Nolan family. [10] Petitioners presented evidence in the form of yearend journal entries, showing that $ 1,662 of the $ 15,000 was included in income in the years in issue. We find that $ 1,662 is not additional income. However, apart from self-serving testimony, petitioners offered no evidence as to the remaining amount. Accordingly, we sustain respondent's determination adjusted for those instances where petitioner has presented documentary evidence to the contrary. Issue 4. Whether Petitioners Have Unreported Income (Non-client-Fee Income)
Because of lack of records respondent asserts that unexplained deposits [11] into the Maynard and McDonald Trust account at the Bank of Alex Brown, and the interest earned therein, is income to petitioners. Similarly, interest earned on the McIssac note *641 and unexplained deposits [12] into the M & B Investment Club account are income to petitioners. As a preliminary matter, petitioner asserts that this is new matter and respondent has the burden of proof. Rule 142(a). We disagree. In the statutory notice of deficiency, respondent determined the unreported income in her adjustment relating to partnership income. Furthermore, respondent asserts that petitioner McDonald has additional income in the amount *642 of $ 1,912 because he has not proven the source of the funds, and that petitioner Maynard has additional income from the Clamper Investment Club account and the P & M Investment Club account because he has not proven the source of the funds. As stated above, when the bank deposits method is employed, "'the Government must take into account any non-taxable source or deductible expense of which it has knowledge.'" DiLeo v. Commissioner, 96 T.C. at 868 (quoting Price v. United States, 335 F.2d at 677). Petitioners argue that they did not have beneficial ownership in the moneys deposited into the trust account. Instead, petitioners contend that they were acting as trustees for the benefit of clients and others, and that deposits into the M & B Investment account were really funds owned by family members. Petitioners' testimony, combined with copies of canceled checks, reflects the fact that petitioners collected monies and made payments on behalf of others out of the M & M trust account. As to the deposits into the M & M trust account and the interest earned therein, we find that petitioners have met their burden of proof *643 and respondent's determination is, therefore, not sustained. See DiLeo v. Commissioner, supra at 869; Parks v. Commissioner, 94 T.C. at 658; Nicholas v. Commissioner, 70 T.C. at 1064. As to the deposits into the M & B Investment Club Account, we do not find petitioners' unsubstantiated testimony persuasive. We sustain respondent's determination. As to the interest earned on the McIssac note, since we have found that the note was property of petitioners, see supra pp. 6-7, we hold that the interest earned on the note is taxable to petitioners. Sec. 61(a)(4). And as to the $ 1,912, petitioner McDonald has explained how the amount was used, but he has not explained the source. Accordingly, we sustain respondent's determination that the $ 1,912 is additional income to petitioner McDonald. Petitioner Maynard testified that the deposits into the Club accounts were from cash received from the Bank of Lodi account. Accordingly, we need not determine the taxability of the Club deposits since we have already determined the taxability of the amounts deposited into the Bank of Lodi account, *644 see supra Issue 3. Unreported Client-Fee Income. Issue 5. Allocation of M & M Partnership Income
Respondent argues that each partner's share of profit, loss, and capital was 50 percent; therefore, the income allocation among the partners should be in equal proportions. Sec. 704(b). A partner's distributive share is determined in accord with the partnership agreement. Sec. 704(a). In the absence of a partnership agreement, or if the allocation does not have substantial economic effect, a partner's distributive share of income shall be determined in accordance with the partner's interest in the partnership. Sec. 704(b). A guaranteed payment is one made to a partner for services or the use of capital if such payment is determined without regard to the income of the partnership. Sec. 707(c). Petitioners testified that their oral agreement was for unequal sharing in profits and losses. Furthermore, they were to be compensated with guaranteed payments based on the services provided to the partnership. Petitioners have provided sufficient evidence that an agreement existed as to the sharing of partnership profits. Respondent has not asserted that the allocations *645 lacked substantial economic effect. Accordingly, we will not disrupt petitioners' allocation of partnership income. Issue 6. Petitioner McDonald's Filing Status
Petitioner filed single for the years at issue. Respondent contends that petitioner was married because the interlocutory decree of divorce did not dissolve the marriage under California law. Sec. 1.6013-4(a), Income Tax Regs. Respondent argues further that the nunc pro tunc decree entered on May 18, 1993, has no effect for Federal income tax purposes. We have held that a "true" nunc pro tunc order which retroactively applies to correct a mistake will be recognized for Federal tax purposes. Hayes v. Commissioner, 101 T.C. 593 (1993); Gordon v. Commissioner, 70 T.C. 525, 530 (1978); Newman v. Commissioner, 68 T.C. 494, 501 (1977). However, if the order is contrary to the law of the State, we must disregard it for Federal tax purposes. Hayes v. Commissioner, supra at 602. And where the application of a Federal statute is involved, an adjudication of a lower State court as to an issue *646 of State law is not binding on the Commissioner, if the Commissioner was not a party to such adjudication and it is inconsistent with the law of the State as announced by the highest court of the State. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). Under California law, a court may enter an order to correct its own judgments nunc pro tunc only to avoid injustice. Phillips v. Phillips, 41 Cal. 2d 869, 264 P.2d 926 (1953). Furthermore, a court may enter a final judgment nunc pro tunc in a proceeding for dissolution, when the parties are entitled to a final judgment, but by mistake, negligence, or inadvertence, the judgment has not been signed, filed, and entered. Cal. Civ. Code sec. 4513 (Deering 1992). Entry of a final divorce decree nunc pro tunc is improper where delay was due to the negligence of the parties. In re Casmir's Estate, 19 Cal. App. 3d 773, 97 Cal. Rptr. 623 (1971); Corbett v. Corbett, 113 Cal. App. 595, 298 P. 819 (1931). And the mere failure of a party to apply for a final decree does *647 not constitute a mistake, neglect, or inadvertence so as to authorize a court to enter judgment nunc pro tunc in a divorce action. Berry v. Berry, 140 Cal. App. 2d 50, 294 P.2d 757 (1956). Respondent argues that petitioner McDonald and his wife, Mary Charles, never intended to take the steps to finalize the dissolution and that they reconciled. Petitioner argues that we should not look behind the California State court judgment of dissolution of marriage and determine whether the State court properly exercised its discretion in making the nunc pro tunc order. Petitioner claims that respondent has presented no evidence that the order was not in accord with the laws of California. We believe that respondent has presented evidence to question the validity of the nunc pro tunc order and its retroactive effect. Based on the record in the instant case, we find that entry of the nunc pro tunc order was contrary to the law of California because there is no evidence that entry of the order nunc pro tunc was necessary to prevent injustice. To the contrary there is evidence that petitioner's delay in applying for a final decree of divorce *648 was intentional. Subsequent to the interlocutory decree, there are instances where petitioner and Mary Charles held themselves out as married, they lived together, and although petitioner was informed during the course of respondent's examination that the marriage was not finally dissolved, petitioner made no effort to correct the matter until shortly before trial. On the instant record, we find that the order did not correct an error in the original judgment or avoid an injustice. Under such circumstance, it should not be given effect for Federal tax purposes. Hayes v. Commissioner, supra at 605; Graham v. Commissioner, 79 T.C. 415 (1982). Accordingly, we sustain respondent's determination that petitioner's marital status during the years in issue was married filing separate. Issue 7. Net Operating Loss and General Business Credit Carryforward -- Petitioner Maynard
Respondent has disallowed petitioner's net operating loss deduction attributable to partnership losses from Maynard Associates, Denver Associates, Nolan Associates, and Maynard, McDonald & Sharer [13] incurred in tax years 1980 and prior. Petitioner's *649 net operating loss carryforward comprises a $ 209,054 loss from the 1980 tax year, $ 11,401 from tax years prior to 1980, and additional losses of $ 734,400 (abandonment of equipment, inventory, and leasehold -- $ 128,282; writeoff of receivables -- $ 97,788, [14] accrued expenses -- $ 21,799; accrued rents -- $ 486,531) from the 1980 tax year. The method of accounting utilized by the taxpayer ordinarily is determinative of the proper year in which a deduction may be taken. Sec. 461(a). In general, under an accrual method of accounting, a liability is incurred, and taken into account for Federal income tax purposes, in the taxable year in which all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability. United States v. Anderson, 269 U.S. 422 (1926); *650 sec. 1.461-1(a)(2), Income Tax Regs. In order to be accruable, a liability must not be contingent on a future event; the amount of the liability must be certain; and there must be a reasonable belief on the part of the debtor that the liability will be paid. Putoma Corp. v. Commissioner, 66 T.C. 652 (1976), affd. 601 F.2d 734 (5th Cir. 1979); United Control Corp. v. Commissioner, 38 T.C. 957, 967 (1962). It is well established that contingent liabilities may not be accrued. Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 284 (1944); Bennett Paper Corp. v. Commissioner, 78 T.C. 458, 470 (1982), affd. 699 F.2d 450 (8th Cir. 1983). A net operating loss is the excess of the deductions allowed over the gross income. Sec. 172(c). A net operating loss for any taxable year may be carried back to each of the 3 taxable years preceding the taxable year of the loss and carried forward to each of the 15 taxable years following the taxable year of the loss. Sec. 172(b). The burden of proof is on the taxpayer *651 to prove the fact and the amount of the loss. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Larabee v. Commissioner, T.C. Memo. 1989-298. Respondent makes a number of arguments why petitioner Maynard's loss should be disallowed, including failure to substantiate the loss, and that the deductions were improper. Petitioner counters that the net operating loss is a proper deduction and the facts relating to the loss and the amount of the loss have been adequately supported through the books and records and testimony presented. In addition, petitioner asserts that the accrual of rent was valid because the liability was asserted in the bankruptcy proceeding in the proof of claim filed by the various lessees. We do not agree. At the time of the bankruptcy filing, the partnerships were no longer in operation, and petitioner was in great financial distress. Based on the record, we find that petitioner had no expectation that the creditors were going to be paid and, in fact, they were not. Furthermore, the rent expense was not set up by petitioner as a liability on the books. It was not until petitioner was faced *652 with respondent's determined tax liability that such claims to additional losses arose. Accordingly, we find that the additional losses were not liabilities giving rise to Federal tax deductions. Furthermore, petitioner's books and records were incomplete and inadequate to support the other amounts included in the net operating loss. And petitioner has not provided us with enough information to determine whether any allowable net operating loss carryforward would have otherwise been absorbed by income in intervening years (1981-86). Accordingly, we sustain respondent's disallowance of the net operating loss deduction. Respondent has disallowed petitioner's general business credit carryforward for lack of substantiation. Petitioner's sole argument is that the credits are from the various partnership entities, and therefore respondent has no basis for denial. Credits are a matter of legislative grace, and petitioners have the burden of proving that they are entitled to the credit. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943); Segel v. Commissioner, 89 T.C. 816, 842 (1987). Taxpayers cannot merely *653 rely on prior years' tax returns in which credits were claimed. Sherwood v. Commissioner, T.C. Memo. 1988-544. A tax return is merely a statement of the taxpayer's claim and does not establish the truth of the matters set forth therein. Wilkinson v. Commissioner, 71 T.C. 633 (1979). Section 38 provides for a credit against tax for the purchase of qualified property. To the extent such credit was not used in the tax year, it may be carried back 3 years or forward 15 years. Sec. 39. A credit carried forward to a tax year beginning after June 30, 1987, must be reduced by 35 percent. Sec. 49(c). Petitioner did not provide any invoices to support the purchase of qualified property upon which a credit could have been claimed. He did not provide supporting books and records for purchases and sales. And he has not provided the Court with enough information to determine whether any allowable credits would have otherwise been absorbed in the intervening years. We find that petitioner has not met his burden of proof, and we sustain respondent. Issue 8. Fraud -- Petitioners McDonald and Maynard
Respondent determined *654 that petitioners are liable for additions to tax for fraud under section 6653(b)(1)(A) and (B) for 1987, and section 6653(b)(1) for 1988. For 1987, section 6653(b)(1)(A) provided for an addition to tax in an amount equal to 75 percent of the underpayment that is attributable to fraud. Moreover, section 6653(b)(1)(B) adds to the tax an amount equal to 50 percent of the interest due on any part of the underpayment attributable to fraud. For 1988, section 6653(b)(1) provided for an addition to tax in an amount equal to 75 percent of the underpayment that is attributable to fraud. For all years in question, section 6653(b)(2) states that if the Secretary establishes that any portion of an underpayment is due to fraud, the entire underpayment is treated as fraudulent, unless the taxpayer proves some portion of the underpayment is not due to fraud. Respondent has the burden of proof on the fraud addition to tax. Sec. 7454(a); Rule 142(b). Respondent must prove by clear and convincing evidence: (1) The existence of an underpayment of tax each year, and (2) that some part of the underpayment is due to fraud. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 515 (1992). *655 The Commissioner can satisfy her burden of proving an underpayment, when the allegations of fraud are intertwined with unreported and indirectly reconstructed income, in one of two ways. DiLeo v. Commissioner, 96 T.C. at 873; Parks v. Commissioner, 94 T.C. at 661. The Commissioner may prove an underpayment by proving a likely source of the unreported income. DiLeo v. Commissioner, supra at 873; Parks v. Commissioner, supra at 661. Alternatively, where the taxpayer alleges a nontaxable source, the Commissioner may satisfy her burden by disproving the nontaxable source so alleged. United States v. Massei, 355 U.S. 595 (1958); DiLeo v. Commissioner, supra at 874. Respondent submitted into evidence bank records, deposit slips, and checks showing that substantial amounts were deposited into bank accounts which petitioners did not disclose to respondent. Petitioners did not include the income that was deposited into the nondisclosed bank accounts in their income tax returns for the years *656 in issue. Furthermore, petitioners' records were incomplete and inadequate. There are numerous instances where petitioners did not account for the source of the unreported deposits. Petitioner Maynard conceded that he did not report amounts received for consulting services. Further, he could not substantiate amounts deducted as losses from partnerships. Therefore, we find that respondent has shown by clear and convincing evidence that petitioners have underpaid their Federal income taxes during the years in issue. Respondent next contends that the record is replete with facts to support findings that the underpayment was attributable to fraud. Fraud consists of an intentional wrongdoing for the purpose of avoiding the payment of taxes known to be owed. DiLeo v. Commissioner, supra at 874. Respondent must show that petitioner intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of the tax. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81. *657 The existence of fraud is a question of fact to be determined on the basis of the entire record. Parks v. Commissioner, supra at 660; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed, it must be established by affirmative evidence. Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992). Fraud, however, can be established by circumstantial evidence and by reasonable inferences drawn from the taxpayer's entire course of conduct. Spies v. United States, 317 U.S. 492, 499 (1943); Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Gajewski v. Commissioner, supra at 200. Courts frequently list various factors or "badges of fraud" from which fraudulent intent may be inferred. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). Although such lists are nonexclusive, some of the factors this *658 Court has considered as indicative of fraud are understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with the tax authorities. Niedringhaus v. Commissioner, supra at 211 (citing Bradford v. Commissioner, supra at 307-308). The sophistication, education, and intelligence of the taxpayer are also relevant. Halle v. Commissioner, 175 F.2d 500, 503 (2d Cir. 1949), affg. 7 T.C. 245 (1946); Niedringhaus v. Commissioner, supra at 202. Petitioners have extensive experience in income tax matters. Petitioner McDonald is a certified public accountant and an attorney with over 40 years of experience in accounting. Petitioner Maynard is a certified public accountant with over 20 years of experience in accounting. Petitioners prepare tax returns for clients and are aware that adequate information must be maintained to verify information on returns. In the instant case there was an abundance of circumstantial *659 evidence of fraud, including several of the traditional "badges of fraud", such as underreporting of income, failure to keep proper books and records, failure to produce many records during discovery, failure to disclose the existence of bank accounts, and failure to cooperate with respondent's agent during the examination. Scallen v. Commissioner, 877 F.2d 1364 (8th Cir. 1989), affg. T.C. Memo. 1987-412; Rowlee v. Commissioner, 80 T.C. 1111 (1983). Under these circumstances, respondent has established by clear and convincing evidence that the entire underpayment of tax for the years in issue was due to fraud, and we hold that petitioners McDonald and Maynard are liable for the additions to tax for fraud for years 1987 and 1988. Issue 9. Additions to Tax for Negligence -- Petitioner GCF, Inc.
Section 6653(a)(1)(A), as in effect for 1988, and section 6653(a)(1), as in effect for 1989, provide that if any part of any underpayment of tax is due to negligence or the intentional disregard of rules and regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. *660 Section 6653(a)(1)(B), as in effect for 1988, imposes an addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Respondent's determination that petitioner was negligent is presumed correct, and petitioner bears the burden of proving that it was not negligent. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Petitioner's business, tax preparation services, is such a circumstance to be taken into consideration. Johnson v. Commissioner, T.C. Memo. 1992-151. Petitioner did not keep or maintain adequate books and records. It did not keep copies of returns prepared for clients. It did not keep an accounts receivable ledger. It maintained hidden bank accounts, and it underreported its income for the years in issue. Based upon the facts and circumstances of the instant case, and given petitioner's business activity, *661 we hold that petitioner is liable for the negligence additions to tax for the years in issue. Issue 10. Substantial Understatement of Income Tax -- Petitioners McDonald, Maynard, and GCF, Inc.
Section 6661(a) imposes an addition to tax on a substantial understatement of income tax. The section provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a). The taxpayer bears the burden of proving that the Commissioner's determination as to the addition to tax under section 6661(a) is erroneous. Rule 142(a). An understatement is substantial where it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000; $ 10,000 in the case of corporations. Sec. 6661(b)(1)(A) and (B). An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). The section *662 6661 addition to tax is not applicable, however, if there was substantial authority for the taxpayer's treatment of the items in issue or if relevant facts relating to the tax treatment were disclosed on the return. Sec. 6661(b)(2)(B)(i) and (ii). Petitioners have made no arguments regarding the substantial understatement additions to tax. If the recomputed deficiency under Rule 155 satisfies the statutory percentage or amount, petitioners will be liable for that addition to tax. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Richard D. Maynard, docket No. 14893-91; Gold Country Financial, Inc., docket No. 25835-91; Bill McDonald, docket No. 13119-92; and Richard D. Maynard, docket No. 13120-92.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to fraud.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to fraud.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
2. Petitioner Maynard has conceded that payments received from Betty Shackelford for professional services rendered and dividends earned by the Clamper Investment account are includable in his income. Furthermore, petitioner Maynard has conceded that he is not entitled to deduct losses incurred in tax year 1987 and 1988 attributable to the Denver Associates partnership. Petitioner Gold Country Financial, Inc., has not offered any evidence nor has it addressed on brief the disallowed investment tax credit carryforward. Accordingly, we find petitioner has conceded this item. See, e.g., Bradley v. Commissioner, 100 T.C. 367, 370↩ (1993).
3. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
4. McDonald and Maynard as vice presidents of GCF, Inc., opened the account.↩
5. The increase to self-employment tax is an automatic adjustment due to the increase in petitioners' self-employment income.↩
6. This adjustment is automatic based on our decision as to petitioner's filing status.↩
7. In petitioners' reply brief they contend that respondent bears the burden of proof on this issue because it was not asserted in the statutory notice of deficiency. Petitioners are mistaken. In her reconstruction of M & M partnership income, respondent added back reported and alleged unreported income attributable to GCF, Inc.↩
8. Petitioners allege in their opening brief that respondent has the burden of proof with regard to the disallowance of automobile expenses because the adjustment is not shown in the notice of deficiency issued to GCF, Inc. Petitioners are mistaken. The alleged automobile expenses were reported on GCF, Inc.'s tax return by reducing gross receipts. Accordingly, in the statutory notice of deficiency, respondent disallowed the automobile expenses by increasing gross receipts by the amount of the automobile expenses.↩
9. In the statutory notice of deficiency to petitioner GCF, Inc., respondent also determined unreported income relating to deposits of $ 6,100 and $ 100 for tax year ended July 31, 1988, and deposits of $ 10,710 and $ 1,912 for tax year ended July 31, 1989. The $ 6,100 and $ 10,710 were not included in income because petitioner claims that such amounts were incurred for auto expenses. Instead of including the deposits in income and deducting the amounts as auto expenses, petitioner did not report the income or expense. However, we need not discuss this issue because we have decided that such amounts were not proper auto deductions, see supra pp. 12-14. The $ 1,912, seems to be unexplained cash of petitioner McDonald which we will discuss in our analysis of his unreported income (non-client-fee), see infra pp. 20-22. The $ 100 item seems to have been conceded, since petitioner has not offered any evidence, nor adequately addressed this issue on brief. Rothstein v. Commissioner, 90 T.C. 488↩ (1988).
10. J. Michael Nolan was one of petitioner Maynard's prior partners in the sandwich shop business.↩
11. In the stipulation of facts par. 60, the parties stipulated that a deposit of $ 18,750 was a nontaxable transfer. Respondent is precluded from asserting that such amount is now taxable. Rule 91(e).↩
12. Petitioner asserts that in the stipulation of facts par. 145, the parties have agreed that the only remaining deposits into the account at issue were checks in the amounts of $ 5,900, $ 4,100, and $ 5,485. We disagree. Par. 145 merely stipulates what an exhibit represents. It does not qualify par. 144, which lists the unexplained deposits into the account.↩
13. Sharer left the accounting partnership in 1980.↩
14. Of this amount, $ 96,437 appears to be a receivable from one of the other sub-shop entities.↩