[S. F. No. 13997. In Bank.—June 15, 1932.]

RICHARD H. GATLEY, Respondent, v. LAURA M. SHOCKLEY, Appellant.

Chas. C. Boynton, John T. Boynton and Chas. H. Sooy for Appellant.

Edw. J. Mitchell for Respondent.

THE COURT.—Plaintiff, who is admittedly the legal owner of certain improved real property in San Francisco, brought this action to quiet his title thereto as against the claims of defendant. Defendant contends that she has an equitable interest growing out of the exercise of an option to purchase the property which she alleges was exercised by her predecessor in interest. Defendant, by way of cross-complaint, asks specific performance of this agreement. The sole question presented at the trial and now presented on appeal is whether or not the defendant's predecessor in interest had in fact exercised the option as provided in the contract. The trial court found that the option had not been exercised, and quieted plaintiff's title as against the defendant. The property involved has had a rather complicated history since 1922, when defendant's predecessor in interest first became connected with it. It appears that in February, 1922, one Carl H. Petersen was the owner of the premises in question. On February 24, 1922, Petersen leased the premises to the Italia Motor Truck Company for a period of ten years at a stipulated rental payable monthly. The lease contained an option clause giving to the optionee the right to purchase the property for $40,000 on condition that the option was exercised on or before June 30, 1924, and on condition $5,000 in cash was tendered at the time the option was exercised. The option clause contained the following provision in reference to the balance of the purchase price: "The balance of purchase price is to be secured by mortgages on said premises, a first mortgage, to bear interest at the rate of six and one-half per cent per annum, and a second mortgage, to bear interest at the rate of seven per cent per annum. Lessee agrees to pay on said mortgages for principal and interest the sum of four hundred dollars per month, less such sums that it may pay for taxes or insurance. . . . " The lease-option also provided, in the event the optionee desired to exercise the option, for the filing with the county recorder of a notice of intention to exercise the option. Time was made the essence of the

agreement, and it was expressly provided that "said lessee agrees not to assign this lease or any part thereof or any interest therein . . . without the written consent of the lessor". As security for its performance of the lease provisions the lessee executed in favor of Petersen a chattel mortgage on all machinery that lessee might install in the premises.

On May 19, 1922, the plaintiff herein purchased the property from Petersen, with notice of and subject to the lease-option agreement of the Italia Motor Truck Company.

In May, 1923, the Italia Motor Truck Company became financially involved. At that time the directors and stockholders of the company organized a new corporation named the Italia Motor Truck *Corporation*. All of the business, property and assets of the old company were transferred to the new corporation, with the exception that the bare legal title to the lease-option was retained by the company. The corporation assumed all the liabilities of the company. All of the stock in the company was surrendered in return for stock in the new corporation, with the exception of four qualifying shares held by the directors of the old company. Thereafter the company ceased to do business, and became practically defunct except in so far as it retained the bare legal title to the lease-option.

In June, 1924, the new corporation was likewise financially embarrassed, the trial court finding that on June 30, 1924 (the expiration date of the option), the corporation was in fact insolvent. In fact, in September, 1924, the corporation was adjudicated a bankrupt.

In June, 1924, the officers and stockholders of the old company determined to attempt to realize some money by exercising the option. They knew that the Yellow Cab Company desired the property for its own purposes. After some negotiations with Arthur O. Smith, the president of the Yellow Cab Company, a meeting of the board of directors of the old company was held on June 26, 1924. The minutes of that meeting disclose that the board formally determined that "this company is not in a position financially to pay the said sum of $5,000 and exercise said option" and that "it is *desirable to assign the right of this company* to exercise said option to anyone desiring to take it over from this company". The board then purported to authorize its

secretary, Mr. Coolidge, to perform all acts necessary to "enable this company to realize some money out of the option". The secretary was vested with complete control over the four outstanding shares of stock in the company. The four directors by letter dated June 26, 1924, then tendered their resignations as members of the board of directors. The secretary of the old company then prepared a notice to plaintiff notifying him that Smith was authorized to act for the company in the matter of tendering performance. The secretary then indorsed and delivered to Smith the four outstanding shares of stock of the company. On June 30, 1924, the secretary executed a notice to Gatley that it, the company, elected to exercise the option. Smith recorded a copy of this notice. In the afternoon of June 30, 1924, Smith withdrew from the bank $5,000 of Yellow Cab Company money, and took this and his various authorizations to Burlingame, where the plaintiff herein resided. Plaintiff on that date was at his summer home in the Santa Cruz mountains, about fifty miles from Burlingame, it being his custom to spend his week-ends there during the summer months. Finding no one at home, Smith testified that he slipped a copy of the notice of election to exercise the option under the front door. Smith returned that evening and met plaintiff's son. Smith told the son of his mission, the son informing Smith that he could not act on behalf of his father, but that he would write to his father. Some time about the middle of July, 1924, Smith again called at plaintiff's residence and found him at home, plaintiff having returned to Burlingame several days after the 30th of June. At that time Smith did not have the $5,000, and made no formal tender, but he discussed the deal with the plaintiff. Plaintiff at that time knew that the Italia Motor Truck Company and the Italia Motor Truck Corporation were in financial difficulties, and he also knew that defendant herein, a creditor of the lessee-optionee, had attached the interest of the optionee in the property. Plaintiff therefore took the position that the option to purchase had not been properly exercised.

Defendant's connection with the property came about as follows: On July 3, 1924 (three days after the expiration date of the option), defendant sued the lessee under its old and new name for a debt owing to her. In that action

she attached the interest of the company and corporation in the property involved herein. She obtained a default judgment on August 5, 1924, and on September 3, 1924, purchased the interest of the optionee at the execution sale. In the meantime, on August 28, 1924, the present plaintiff brought an action in unlawful detainer against the lessee. In that action the present defendant was not and could not have been made a party. The lessee defended the unlawful detainer action on the ground that it was lawfully in possession of the property because it had exercised the option to purchase on June 30, 1924, and therefore its liability for rent had terminated. The trial court, after a trial on the merits, found that the alleged tender of June 30, 1924, was not made by the Italia Motor Truck Company but was in fact made by the Yellow Cab Company in violation of the provision against assignment, and further found that the ''pretended tender of $5,000 was not made in good faith and that it was sham and mere pretense''. No appeal was taken from the judgment in that action, and the same has long since become final. That decision was rendered in June of 1925. In July, 1925, the Italia Motor Truck Company brought an action against the present plaintiff for specific performance of the option agreement. Plaintiff filed a demurrer which has never been passed upon. That action is still pending in the trial court.

In September, 1925, the defendant herein received her sheriff's deed to the premises based on the execution sale, the redemption period having expired. She did not record her deed until February, 1928, evidently withholding the same from record in pursuance to an oral understanding with the Italia Motor Truck Company. In April, 1928, plaintiff brought this action to quiet his title as against defendant's claims. As already stated, defendant answered and cross-complained for specific performance of the option agreement. The trial court quieted plaintiff's title as against the claims of defendant. As disclosed by the findings, the trial court reached this conclusion on several theories:

1. It found that the judgment in the unlawful detainer action, in determining that the option had in fact not been exercised, was *res judicata* in this action as to the same point.

2. It found that the option agreement was too uncertain to be specifically enforced for the reason that the agreement does not state the amounts of the first and second mortgages.

3. It further found that the purported exercise of the option was ineffectual for the reason that it was "sham and not made in good faith nor in accordance with the contract, but on the contrary in avoidance of its terms and conditions and of the express provision thereof against assignability"; that the purported tender was not made by Smith on behalf of the optionee, "but was solely and wholly attempted in behalf and in the interest of the principal of said Smith, Yellow Cab Company".

4. It further found as a fact that defendant has remained inactive since September 3, 1924, and until the filing of her cross-complaint herein in 1928; that plaintiff in 1925 leased the property to third parties.

We do not find it necessary to determine whether the decision in the unlawful detainer action is or is not *res judicata* in this case, for the reason that we are of the opinion the judgment of the trial court must be affirmed for other reasons.

It is to be noted that although the total purchase price, and the amount of the down payment is specified in the option agreement, and it is further provided that the balance of the purchase price is to be evidenced by a first and second mortgage, the agreement is entirely silent as to the amounts of each mortgage. Defendant sought to prove an oral agreement between the Italia Motor Truck Company and Petersen, the plaintiff's predecessor in interest, to the effect that the first mortgage was to be in the amount of a bank loan to be later secured by Petersen. Assuming such an oral understanding to have existed with Petersen, it is not made to appear how that fact could cure the uncertainty as far as plaintiff is concerned, the evidence failing to show that plaintiff had actual or constructive knowledge of this alleged oral understanding. It is elementary that equity requires as a condition of specific performance a clear mutual understanding and a positive assent on both sides as to the terms of the contract, and it will withhold the exercise of jurisdiction in that respect unless there is such a degree of certainty as will enable it to do complete equity.

The contract must not only contain all the material terms, but the terms must, in the language of the code, be "sufficiently certain to make the precise act which is to be done clearly ascertainable". (Civ. Code, sec. 3390; 23 Cal. Jur. 429, sec. 11.) Here the contract fails entirely to provide for one of the most essential terms. ██ This defect could not be cured by a cash tender made. many months after the option had expired, time being the essence of the agreement and no waiver being pleaded or proved.

██ Moreover, defendant has failed to satisfactorily explain why she rested on her rights for a period of approximately three years after she received her deed to the property. It would seem that such inaction, not satisfactorily explained, coupled with the re-leasing of the property by plaintiff, amounted to laches.

There is still another reason which clearly indicates that the judgment must be affirmed. Under the uncontradicted facts it appears that the purported tender by Arthur Smith was not the tender required by the contract, and was in direct violation of the nonassignable clause contained in the lease-option agreement.

██ It is clear that the lease and option constituted but one contract, the provisions of which were interdependent, the consideration for the lease likewise supporting the option. (*Gordon* v. *Dufresne*, 205 Cal. 512 [271 Pac. 1066].) It is likewise clear that under the terms of this lease-option the provision against assignment applied equally to the lease and to the option. (*Prichard* v. *Kimball*, 190 Cal. 757 [214 Pac. 863]; see note in 38 A. L. R. 1172.)

██ It is obvious that for all practical purposes the Italia Motor Truck Company had ceased to do business as a corporation in May, 1923, when it assigned all of its business and assets to the Italia Motor Truck Corporation. After May, 1923, the old company had no assets of any kind or nature except the bare legal title to the lease-option, the company being kept alive for the sole purpose of holding that title. In June, 1924, the company realized that neither it nor the new corporation, which was likewise insolvent, could exercise the option. The directors of the company knew that the Yellow Cab Company desired to purchase the property for its own purposes. The Yellow Cab Company had no desire to purchase the Italia Motor Truck Company.

Its sole intent in the matter was to purchase the property for its own purposes. The minutes of the directors' meeting of the old company of June 26, 1924, disclose that the arrangement was in fact nothing more than an assignment to the Yellow Cab Company or to its president, Smith. The minutes specifically recite that "it is desirable to assign the right of this company to anyone desiring to take it over from this company", and the secretary was empowered to perform the acts necessary to accomplish that purpose. Various steps were taken thereafter which were obviously taken with the intent of making it appear that the Italia Motor Truck Company was exercising the option, when in fact everyone connected with the transaction knew it was the Yellow Cab Company. The authorization by the defunct company to Smith to act as its agent was obviously a mere sham. Smith testified that at all times he was acting solely in the interests of the Yellow Cab Company. The money he used to make the alleged tender was not the money of the Italia Motor Truck Company nor had it been loaned to it. It was Yellow Cab Company money, and when the tender was refused it went back into the Yellow Cab Company account. The other steps that were taken to accomplish the tender likewise indicate that the whole procedure was a sham. All the directors of the old company tendered their resignations on June 26, 1924, and likewise surrendered and indorsed their four shares of stock to Smith. Then, on June 30, 1924, the former secretary of the old company, who had tendered his resignation and had indorsed his qualifying share to Smith, executed in the name of the company a notice of election to exercise the option. At that time Smith was supposedly the entire Italia Motor Truck Company. It does not appear how the old secretary could act for the company after the old board of directors had passed out of existence by the surrender of their qualifying shares. In the circumstances the finding of the trial court that the whole procedure was a sham to accomplish an assignment to the Yellow Cab Company in violation of the provisions of the option agreement is amply supported by the evidence. ■ Furthermore, the alleged tender was merely of $5,000. There is no evidence that on June 30, 1924, or at any time prior thereto, Smith or anyone else on behalf of the Italia Motor Truck Company ever tendered

notes signed by the Italia Motor Truck Company or by anyone else in the sum of $35,000 as evidence of the balance of the purchase price. This would seem to have been an integral part of the required tender.

For the foregoing reasons we are clearly of the opinion that no valid tender was made on June 30, 1924, by the optionee or by anyone acting on its behalf, and for that reason the judgment appealed from should be and hereby is affirmed.