Filed 6/28/23  Benik v. 13290 Contractors Lane CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| ERIK BENIK et al., | C095469 |
| Plaintiffs and Appellants, | (Super. Ct. No. 18CV03508) |
| v. | |
| 13290 CONTRACTORS LANE, LLC et al., | |
| Defendants and Respondents. | |

Plaintiffs Erik Benik and Wishbone Ranch, LLC (Wishbone) and James Heath (collectively plaintiffs) entered into three successive leases for a warehouse property in Chico with defendant 13290 Contractors Lane, LLC (Contractors), managed by defendant Richard Bringgold (collectively defendants).  The first lease gave Benik an option to purchase the property, but the two subsequent leases provided rights of first refusal.  After the parties had entered into the third lease, Benik attempted to exercise the option to purchase the property and defendants refused to acknowledge the validity of the option.  Plaintiffs filed a complaint alleging numerous causes of action related to the

1

alleged breach of the purchase option. After a court trial, the trial court ruled in favor of defendants, finding the final lease had an integration clause superseding the purchase option in favor of the right of first refusal.

On appeal, plaintiffs contend the trial court erred, arguing the subsequent leases did not supersede the purchase option. We affirm, finding the final lease was integrated as to all matters mentioned within, including the purchase of the property. This bars consideration of any prior agreement relating to the purchase of the property between the parties.

BACKGROUND

The facts are uncontested. Benik entered a lease with Contractors for the premises at 13290 Contractors Drive in Chico starting December 1, 2016, and ending November 30, 2018. The lease included an option to purchase as an addendum. The option permitted Benik to purchase the property for $2,990,000 if he exercised the option by written notice between December 1, 2016, and November 30, 2018. The purchase option also stated additional terms and conditions were provided in an additional addendum. This addendum stated: "In the event that the Lessee is not in default of any provisions of the lease, Lessee shall have Option to Purchase property at the twenty-fourth (24th) month or sooner for the purchase price of $2,990,000.00. Lessee's monthly rent in its entirety shall be applied to the down payment."

The lease included an integration clause titled "No Prior or Other Agreements" stating, "[t]his Lease contains all agreements between the Parties with respect to any matter mentioned herein, and no other prior or contemporaneous agreement or understanding shall be effective."

On December 5, 2016, Bringgold emailed Benik stating he had not yet received any of the money owed under the lease, was cancelling the contract, and stated it would be in the interest of all parties to renegotiate.

2

Benik and Contractors entered a second lease for the same location starting December 1, 2016 to November 30, 2021, with an option to renew for three five-year periods. This lease did not include an option to purchase but it did include a "First Right of Refusal." This term stated that, "[s]hould Lessor receive a valid Offer to Purchase said property, Lessee shall have thirty (30) days to meet or exceed said Offer to Purchase the property." All other material terms in this lease were the same as the first lease, including the integration clause.

Contractors entered into a third lease with Wishbone, an entity owned and run by Benik and his wife. This lease was for the same location for the period from June 1, 2017 to May 31, 2022, with three options to renew for five years. This third lease also had the same right of first refusal as the second lease without an option to purchase. Benik was a personal guarantor of this lease. All other material terms, including the integration clause, were the same as the first two leases.

On September 24, 2018, Benik sent a letter to Contractors giving notice he was exercising the purchase option and requesting confirmation on the remaining balance of the purchase price. On October 3, 2018, Contractors responded there was no option to purchase. On October 23, 2018, plaintiffs filed a complaint against defendants alleging breach of contract and other causes of action related to defendant's refusal to honor Benik's purchase option.

After a five-day court trial, the trial court found Benik was not entitled to the purchase option in the first lease and found in favor of defendants on all causes of action. The court found the third lease superseded the first two leases, including the purchase option in the first lease, because the third lease had an integration clause. The parol evidence rule prohibited the introduction of the purchase agreement to vary, alter, or augment the third lease. Thus, the trial court found defendants "established by sufficient evidence that [the first lease] was superseded by" the second and third leases and the third lease "contained all terms intended by the parties to be part of the respective leases."

3

The trial court also found defendants established the second lease was a novation of the first lease.

DISCUSSION

Plaintiffs contend the purchase option was enforceable when Benik sought to exercise it. They argue "neither the cancellation of [the first lease] nor the inclusion of the First Right of Refusal" in the second and third leases could revoke the "independent" purchase option. We disagree.

The parol evidence rule generally prohibits the introduction of any extrinsic evidence to vary or contradict the terms of an integrated written instrument, including "evidence of a prior agreement." (Code Civ. Proc., § 1856, subd. (a); Civ. Code, § 1625.) "When the parties to a written contract have agreed to it as an 'integration'—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms. . . . The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement." (*Masterson v. Sine* (1968) 68 Cal.2d 222, 225.) "Generally, finality may be determined from the writing itself. If on its face the writing purports to be a complete and final expression of the agreement, parol evidence is excluded." (*Pollyanna Homes, Inc. v. Berney* (1961) 56 Cal.2d 676, 679-680.) "An integration may be partial rather than complete: The parties may intend that a writing finally and completely express only certain terms of their agreement rather than the agreement in its entirety. [Citation.] If the agreement is partially integrated, the parol evidence rule applies to the integrated part." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 953.)

Interpretation of a contract, and its level of integration, is a question of law we review de novo. (*DVD Copy Control Ass., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 713; *EPA Real Estate Partnership v. Kang* (1992) 12 Cal.App.4th

4

171, 176.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.)

The third lease contained an integration clause rendering ineffective any "prior agreement" dealing with "any matter mentioned" in the lease. The second and third leases included a right of first refusal, permitting plaintiffs to buy the property at or above any offer defendants received. The purchase option plaintiffs contend is effective was executed before the second and third leases and purports to permit them to purchase the same property but at an agreed price of $2,990,000. The purchase option is therefore prohibited by the integration clause because it deals with the same matter as the rights of first refusal: purchase of the property.

The purchase option and the right of first refusal are also inconsistent. If Contractors received an offer for more than $2,9990,000, the rights of the parties would be substantially different depending on which provision is applied.[1] Thus, the parol evidence rule is triggered as an evidentiary bar because the purchase option involves the same matter as, and is also inconsistent with, the right of first refusal contained in the subsequent integrated leases. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 344 ["terms contained in an integrated written agreement may not be contradicted by prior or contemporaneous agreements. In doing so, the rule necessarily bars consideration of extrinsic evidence of prior or contemporaneous negotiations or agreements at variance with the written agreement"].)

Plaintiffs contend the second and third leases "make *no* mention of the Purchase Option" so the purchase option is not a matter "*mentioned* in Lease 2 or Lease 3." They argue this makes it a "partial integration clause." It does not matter, however, whether we conclude it is partial or fully integrated because the parol evidence rule applies to any

---

[1]    Though not determinative on this legal issue, there was testimony at trial the property was appraised at close to $6,000,000 in 2018.

integrated portion. Here, the subsequent leases are integrated as to all matters mentioned within them. And plaintiffs' asserted interpretation of this language requires adding a modifier limiting it to only agreements that deal with the same matters *in the same way*. Both the purchase option and the right of first refusal dealt with buying the property. That they were different methods, right to purchase at a fixed price versus at or above an offered amount, makes no difference under the language of the integration clause covering all matters in the lease.

Plaintiffs assert *Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1 (*Jenks*), requires a different result; we disagree. In *Jenks*, an employee sued in superior court based on terms in a termination agreement. The employer petitioned to compel arbitration based on an arbitration provision in the employee's offer letter. (*Id*. at pp. 5-6.) The termination agreement did not have a dispute resolution provision but did have an integration clause stating: " 'This Agreement constitutes the entire agreement between the parties *with respect to the subject matter hereof and supersedes all prior negotiations and agreements*.' " (*Id*. at p. 15.) The appellate court found this integration clause did not supersede the arbitration provision in the offer letter because the termination agreement did not "mention arbitration at all, and contains no provisions regarding dispute resolution. Consequently, the *identified* forum for dispute resolution remains arbitration based on the original Offer Letter." (*Id*. at pp. 15-16.)

*Jenks* supports our conclusion the purchase option is barred because it is a different *method* on the same *matter* as the right of first refusal. The integration clause in the *Jenks* plaintiff's subsequent termination agreement had a similar integration clause to those in the leases here, disclaiming prior agreements on the same "subject matter." (*Jenks, supra*, 243 Cal.App.4th at p. 15.) But the termination agreement was silent on the *subject matter* of dispute resolution generally and did not mention arbitration or any other forum as a specific *method* for dispute resolution. (*Id*. at pp. 5, 15-16.) The *Jenks* court

6

implied that a provision describing any method for dispute resolution in the termination agreement would have superseded the arbitration provision in the offer letter because it found the letter "contains no provisions regarding dispute resolution."  (*Id.* at pp.15-16.) Had the subsequent termination agreement specified a method for addressing the matter of dispute resolution, such would likely have superseded the arbitration provision in the offer letter by operation of the integration clause.  The *Jenks* court found support in *Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, which similarly found a prior agreement with an arbitration provision (the method) was not superseded by a subsequent agreement without a dispute resolution provision (the matter).  (*Jenks*, at pp. 16, 19-20 ["Since the written employment agreement was silent on the *forum for dispute resolution*, Cione's . . . *arbitration agreement* with NASD was probative and admissible as not inconsistent with the terms of such employment agreement" (emphasis added)].)  *Jenks* and its supporting cases are consistent with our finding here that two provisions regarding the purchase of the property cover the same matter even if they are different methods for dealing with that matter.

Plaintiffs also argue purchase options are distinct agreements reflecting an irrevocable offer that once made and accepted, cannot be revoked by the offeror.  Here, the purchase agreement could be terminated only in a few specific circumstances and plaintiffs argue none were present when Benik sought to exercise the option.  This argument relies on law that "[a]n option contained in a lease is itself a contract, distinct from the lease to which the option relates."  (*Ripani v. Liberty Loan Corp.* (1979) 95 Cal.App.3d 603, 609.)  Plaintiffs do not discuss the limits of this rule, as options are not always severable from their underlying leases.  (*Prichard v. Kimball* (1923) 190 Cal. 757, 764 ["The option thus formed a part of the lease, and was dependent on it."]; *Gatley v. Shockley* (1932) 215 Cal. 604, 611 ["It is clear that the lease and option constituted but one contract, the provisions of which were interdependent"]; *Wallace v. Imbertson* (1961)

7

197 Cal.App.2d 392, 396 ["The existence of the option therefore depended on existence of the lease.  If the lease fell, the option fell with it."].)

But more fundamentally, even assuming the purchase option here was an irrevocable offer severable from the first lease, it would still be a contract.  (*Steiner v. Thexton* (2010) 48 Cal.4th 411, 420 [" 'Manifestly, then, an irrevocable option based on consideration is a contract' "]; *Rollins v. Stokes* (1981) 123 Cal.App.3d 701, 711 [finding an option, from the lessor's point of view, is "a contract to sell the property during the lease term"].)  And contracts can be rescinded, abandoned, terminated, and superseded by mutual assent.  (See Civ. Code, § 1689, subd. (a) ["A contract may be rescinded if all the parties thereto consent."]; *Kane v. Sklar* (1954) 122 Cal.App.2d 480. 482 [" 'An executory contract may be rescinded, abandoned, or terminated, either wholly or in part, by the mutual consent of the respective parties at any stage of their performance.' "].)  Plaintiffs provide no law, and we are not aware of any, establishing an option is uniquely immune to all future agreements between the same parties.  Nor should there be, as this would impede the parties' freedom to contract, a core tenant of contract law.  (*VL Systems, Inc. v. Unisen, Inc.* (2007) 152 Cal.App.4th 708, 713 ["Freedom of contract is an important principle"].)  Thus, like any other agreement, an option is subject to mutual abandonment, rescission, novation, or other mutual modification between the parties.[2]

---

[2]      The trial court found the second lease was a novation of the first lease, which requires a factual inquiry into the circumstances of the agreements.  (*Alexander v. Angel* (1951) 37 Cal.2d 856, 860 ["the evidence in support of a novation must be 'clear and convincing', [citation], the 'whole question is one of fact and depends upon all the facts and circumstances of the particular case' "].)  But it ultimately does not matter whether the subsequent leases constituted a novation, mutual recission, mutual abandonment, or any other means to withdraw a prior agreement and reengage in a new one.  What matters is that whatever the parties discussed and agreed to was incorporated into an integrated written contract, disallowing consideration of any prior inconsistent agreements.

8

(*Lohn v. Fletcher Oil Co.* (1940) 38 Cal.App.2d 26, 32 [affirming a "trial court's conclusion that the option agreement was mutually abandoned"].)

This point is further highlighted by addressing plaintiffs' final argument that "California law confirms that the First Right of Refusal 'has no effect whatever' on the Purchase Option and that the subsequent granting of the First Right of Refusal leaves 'unimpaired' Benik's pre-existing right to exercise the Purchase Option." Plaintiffs cite *Green v. Sprague Ranches* (1959) 170 Cal.App.2d 687 for this proposition, which analyzed a lease that was modified to include a right of first refusal and then modified again to include a purchase option. (*Id*. at pp. 688-689.) The court found "the intention of the parties would more reasonably appear to have been to create an independent and separate right [to purchase] not extinguishable by the exercise by plaintiffs of the first refusal clause." (*Id*. at p. 691.) This is readily distinguishable from the present case because it dealt with modifications to the *same agreement*, whereas at issue here is a *subsequent agreement*. (See 12 Witkin, Summary of Cal. Law (2023) (11th ed. 2023) Real Property, § 556(2)(b) [citing to *Green* for the proposition both purchase options and rights of first refusal "may be contained in the same agreement"].) *Green* did not bestow special powers on the option, but merely interpreted it as any other contractual term. Nor was the option being introduced to vary the terms of a subsequent agreement. And *Green* noted similar cases have "been decided under the peculiar facts there present with slight differences in the wording in each instrument construed." (*Green*, at p. 691.) So instead of announcing any broad rule that options can never be superseded by rights of first refusal, the ruling in *Green* was based "[u]nder the peculiar facts of the case at bar." (*Ibid*.)

The parties constructed the contract at issue here to contain the entire agreement for the lease and purchase of the property, and any prior agreement on the matters was ineffective. Defendants did not unilaterally "cancel[]" the purchase option, as plaintiffs contend, but the parties together entered into entirely new agreements concerning the

9

same matters.  As the Supreme Court said many years ago:  " 'If the claimants had any objection to the provisions of the contract they signed, they should have refused to make it.  Having made it and executed it, their mouths are closed against any denial that it superseded all previous arrangements.' "  (*United States ex rel. International Contracting Co. v. Lamont* (1894) 155 U.S. 303, 310.)  Therefore, the trial court correctly concluded the purchase option for the property was ineffective.

DISPOSITION

The judgment is affirmed.  Costs are awarded to defendants.  (Cal. Rules of Court, rule 8.278(a).)

\s\                   ,
McADAM, J.*

We concur:

\s\          ,
MAURO, Acting P. J.

\s\          ,
DUARTE, J.

---

\*      Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.